# THE COMMISSIONERS OF ABERDEEN *vs.* LEANNA BRADFORD.

*Water Courses—Diversion of Stream by Construction of Intake Well— Continuing Nuisance—Limitations—Damages.*

The water in a stream flowing through plaintiff's land came from a · spring which was fed by an underground channel. Defendant, a municipal corporation, made on its land, above that of the plaintiff, an intake well which intercepted the underground channel and collected the water which was pumped thence into a standpipe and distributed in the town, so that the quantity of water flowing in the stream on the plaintiffs' land was greatly diminished. In an action to recover damages for the diversion of the water, the defendant contended that the construction of the well was the cause of the injury complained of; that the Statute of Limitations began to run from the time of the completion of the work and since that had been completed more than three years before the institution of the suit, the statute is a bar to the action. The evidence showed that the well or reservoir constructed by the defendant had no outlets other than an overflow pipe near the top and the large pipe near the bottom through which the water was pumped to the standpipe. The spring that had supplied the stream running through the plaintiff's land was a few feet distant from the well. Unless pumped out, the water would flow through the overflow pipe back into its accustomed channel through plaintiff's land. *Held,*

1st. That since the water was diverted from the plaintiff's land not by the mere construction of the well, but by the daily pumping of it from

the well to the standpipe, the proximate cause of the injury to the plaintiff was such taking of the water and since that is a continuing act the Statute of Limitations is not a bar to the action.

2nd. That the plaintiff is entitled to recover for the permanent injury to his land, which the evidence tended to show, and all the damages directly resulting from the diversion of the water.

3rd. That even if the defendant brought upon plaintiff's land other water to supply the place of that taken, yet that circumstance is not a bar to an action for depriving plaintiff of the water to which he was entitled.

Appeal from the Circuit Court for Harford County (WATTERS, J.), where there was a verdict for plaintiff for $500. The defendant filed the following pleas :

1. For a first plea to the plaintiff's amended declaration filed the 15th day of March, 1901, the defendant says : It did not commit the wrong alleged. 2. And for a second plea to the plaintiff's said amended declaration, the defendant says that the cause of action therein mentioned did not accrue within three years before the bringing of this suit. 3. And for a third plea to the plaintiff's said amended declaration the defendant says that the cause of action therein mentioned did not accrue within three years before the filing of said amended declaration, to wit, the 15th day of March, 1901. 4. And for a fourth plea to the plaintiff's said amended declaration the defendant says that the streams which supplied the spring or springs on defendants land mentioned in plaintiff's declaration and which the defendant by means of an intake well constructed on its own property, diverted and turned as therein mentioned were not surface streams or defined water courses but mere underground streams percolating through the soil of the defendants land, with no defined or regular course or channel.

*Plaintiff's 1st Prayer.*—If the jury believe from the evidence that the plaintiff is the owner of the farm mentioned and described in the declaration in this case and that there is a stream of water running through and over said farm, which the plaintiff and those under whom she claims have enjoyed for more than twenty years and further find from the evidence that the defendant diverted from said stream any part of said water, then the verdict must be for the plaintiff. (*Granted.*)

*Plaintiff's 5th Prayer.*—If the jury shall find in favor of the plaintiff, then in estimating the amount of damage to be given by their verdict they may take into consideration any loss and injury they may find from the evidence, the plaintiff has sustained by reason of the diversion of the water that of right ought to flow through her land which has occured within three years before the institution of this suit and down to the trial of this case and allow to the plaintiff such sum as they believe will compensate her for the damage and injury they may believe she had suffered from such cause including compensation for injury to her land (if they find there was any), naturally and necessarily resulting from such diversion. (*Granted.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*J. J. Archer*, (with whom was *J. Thos. C. Hopkins* on the brief), for the appellant.

The Court below in granting the defendant's 1st, 2nd, 3rd, 4th, 7th and 15th prayers, following the decisions in *Chesemore* v. *Richards*, 7 H. L. C. 349; *The Mayor of Bradford* v. *Pickets*, (1895) Appeal Cases 587; *New River* v. *Johnson*, 2 El. & El. 445; *Regina* v. *Metropolitan Board of Works*, 3 B. & S. 710; *Broadbent* v. *Ramsbotham*, 11 Ex. 602; *Delhi* v. *Youmans*, 45 N. Y. 362; *Wheatley* v. *Branch*, 1 Casey, 528; *Wheatley* v. *Baugh*, 25 Pa. St. 529, etc., submitted the defense, that if the defendant's water supply was obtained from underground percolating waters, and not from any surface springs or streams, that then it had the right to take said water for the use of the town and was not liable in this action.

And the verdict being for the plaintiff, we must therefore concede for the purpose of this appeal that the surface springs and streams, on and near defendant's property, which flowed to the stream on plaintiff's farm, were destroyed by the defendant as testified by the plaintiff's witnesses.

The only theory on which the ruling of the Court on defendant's 13th and 14th prayers can be sustained, is that there

was no evidence from which the jury were entitled to find
that the cause of action accrued more than three years prior
to the institution of the suit.

Now the wrong complained of by the plaintiff was, that the
defendant, by the construction of its reservoir upon its own
land, on which was a large spring, and quite near thereto an-
other, from each of which a considerable quantity of water
was accustomed to flow to the stream of her farm, forming
its chief supply, permanently destroyed these springs and
streams, which immediately lowered the water in the plaintiff's
stream to such an extent that there has never since then been
sufficient water in it for the use of the farm, though prior to
that there had always been ample.   And in consequence the
value of the farm was greatly diminished.

The defendant's original act, resulting in the diversion of
the water from plaintiff's stream, constituted a nuisance, and
the plaintiff's right to sue dates from the diversion.   And un-
less suit was brought within three years, that cause of action
would be barred under the statute, as there was evidence that
that diversion occurred more that three years before the insti-
tution of this suit.   But the appellee contends that the injury
is a continuing nuisance, and therefore the statute does not
apply.   Now the theory of a continuing nuisance, or a con-
tinuing trespass, where every continuance is held to be a new
nuisance, or a new trespass, giving rise to a new cause of ac-
tion, is that the injury is of a temporary character, and the
damages are not permanent, but capable of being apportioned.

In such cases the law presumes that the defendant will
abate the nuisance when it has been determined by a suit that
his act is unlawful, and therefore it would be unfair to subject
him to permanent damages for what might be removed the
next day and the parties restored to their original positions.
But if the defendant perseveres in his wrongful act, then re-
peated suits will force him to discontinue the wrong.

But the policy of the law is to have an end of litigation,
and therefore when the injury is of a permanent character,
and the damages go to the value of the property, it is origi-

nal, and creates but a single cause of action, and all damages, past, present and future, must be recovered in one suit.

In these cases there is no continuing act for which repeated actions can be brought. The wrong is original and will support but one action, which must be brought within three years from the date of the injury complained of. The question then is whether such an action as is presented by the evidence in this case must be brought within three years from the defendant's original wrongful act, or whether the injury is to be treated as a continuing one, for which every continuation is a new wrong, giving rise to a new action. This question, whether a nuisance is to be treated as continuing or not, has been presented to the Courts in a variety of ways, in a number of different cases. 1. Where suits have been brought to recover permanent damages, which could be allowed only on the theory that the nuisance was of a permanent character, and would support but a single action. 2. Where a former judgment has been pleaded to a subsequent suit brought for continuing the nuisance. 3. Where a grantee of property has sued to recover for the continuance of a nuisance originally committed before he acquired the property. 4. Where the Statute of Limitations has been pleaded in bar of the suit.

And in none of the cases that have come to our attention, where it has been held that the injury was original, and did not create a continuing nuisance, have the facts presented a stronger case of permanent injury, with damages going to the value of the estate, than the case at the bar. *The Town of Frey* v. *The Chesshire R. R. Co.*, 3 Foster, (23 N. H.) 83; *Stoghill* v. *C. B. & C. R. R. Co.*, 53 Iowa, 341; *Finley* v. *Hershey*, 41 Iowa, 389; *Chicago* v. *Maher*, 91 Ill. 312, page 316, etc.; *Chicago, etc., R. R. Co.* v. *Casey*, 90 Ill. 382; *The City of Lafayette* v. *Nagle*, 113 Indiana, 425; *Powers* v. *The City of Council Bluffs*, 45 Iowa, 652; *Fowle* v. *New Haven, etc. R. R.*, 107 Mass. 352; *Same,* 112 Mass. 334; *Gould, Waters*, secs. 416-19; *Wood on Limitation of Actions*, sec. 180.

The very nature of the act stamps it as permanent. The injury was due to the construction by a municipal corporation

of water works for the benefit of the town, at a cost of some
$15,000. And the permanency of the act complained of by
the plaintiff is at the very foundation of the whole enterprise.
The damage as proved by the plaintiff's witnesses was per-
manent. The springs and streams which (they say) mainly
supplied the plaintiff's stream with water were dried up and
destroyed by the digging of the reservoir, and have ceased to
exist from that time—so much so that all appearance of them
even has vanished—and the plaintiff's stream from that time
has been insufficient for the needs of the farm. But the plain-
tiff can hardly at this stage deny the permanency of the dam-
age, when her witnesses testified that the canning-house on
the property had been rendered useless, and the farm depre-
ciated in value one-half, and she asked and was granted a
prayer for permanent damages to the land. And there was
ample evidence to go to the jury that the original wrong oc-
curred more than three years before the institution of this suit.
Is the defendant then to be deprived of the benefit of its plea
of limitation, on the ground that the wrong is a continuing
nuisance, and liable hereafter to be mulcted in future damages
unless it abandons its water works, and the plaintiff in the
same suit to be allowed to recover permanent damages. If
the wrong is to be held to be a continuing nuisance, then ex-
emplary damages could not be denied to the plaintiff in a sub-
sequent suit for the continuance of the nuisance. *McCoy* v.
*Donley*, 20 Pa. 85.

The plaintiff's 5th prayer should have been refused. 1st.
Because it submits to the jury to find permanent damages for
injury to the land, and at the same time damages for injury to
the use prior to the trial of the case. While such a proposi-
tion would be correct if the facts correspond with those in
*Merryman's case*, 86 Md., we respectfully submit that it is
clearly erroneous in a case like the one at bar. It combines
damages applicable to a continuing nuisance with those appli-
cable to a permanent nuisance, and allows the jury to give
compensation for both kinds of damages. The law of the
Merryman case cannot be correctly applied here. The evi-

dence of loss is whether inconvenience, etc., were admissible simply for the purpose of estimating the diminished value of the farm caused by loss of water. *Chicago, etc., R. R.* v. *Cascy*, 90 Ill. 514; *Autunith* v. *St. L.*, 36 Mo. App. 2d. Because it leaves to the jury to find damages for a diversion of the water down to the trial of the case.

*Thos. H. Robinson* and *John S. Young*, for the appellee.

1. The testimony excepted to by the defendant was properly admitted, because the construction of the water supply for the town of Aberdeen was a permanent matter and intended to remain ; therefore the plaintiff is entitled to permanent damages, that is, she was entitled to recover for any loss or injury she sustained by reason of the diversion of the water which had occurred within three years before the institution of the suit and down to the trial of the case, including compensation for injury to her land, if any, naturally and necessarily resulting from such diversion. *Mayor and City Council of Baltimore* v. *Merryman*, 86 Md. 584; *Frostburg* v. *Duffy*, 70 Md. 55; *Redemptorist* v. *Wenig*, 79 Md. 348.

2. Where the damages are of a permanent character and affect the value of the estate a recovery may be had in a suit at law of the entire damage in one action. *Smith* v. *Point Pleasant, etc., R. R. Co.*, 23 W. Va. 453; *Town of Troy* v. *Cheshire R. R. Co.*, 23 N. H. 102; *Easterbrook* v. *Erie Railway Co.*, 51 Barb. (N. Y.) 94; *Fowle* v. *New Haven*, 107 Mass. 352; *Same* v. *Same*, 112 Mass. 334; *Seeley et al.* v. *Alden*, 61 Pa. St. 302.

3. All common law authorities agree that a riparian owner has the right to the natural stream of water flowing by or through his land in its ordinary natural state, both as to quantity and quality, as incident to the right to the land on or through which the water runs, and that right continues except so far as it may have been derogated from by user or by grant. *Mason* v. *Hill*, 5 B. and Ad. 1; *Wood* v. *Wand*, 3 Exc. 748. *Woodyear* v. *Schaefer*, 57 Md. 1; *Gladfelter* v. *Walker*, 40 Md. 1; *Mayor and C. C. of Baltimore* v. *Warren Mfg. Co.*, 59 Md.

96; *Washington Co. Water Co.* v. *Garver*, 91 Md. 398; *Washburn's Easements and Servitudes*, 319; *Mayor and C. C. of Baltimore* v. *Appold*, 42 Md. 456.

4. And no user short of the period of *legal prescription* will, without consent or grant, confer any exclusive right as between different riparian owners to the use of the water of a running stream ; if, however, the prior occupant has enjoyed the use of the water in any particular mode, or for carrying on any particular trade or manufacture for *twenty years*, so as to have acquired a right of user by prescription, he is in that case entitled to remain undisturbed in such user in the mode and to the extent defined by the actual enjoyment of the use. *Williams* v. *Gale*, 3 H. & J. 231; *Mayor & C. C. of Balto.* v. *Warren Mfg. Co.*, 59 Md. 94; *Kay* v. *Kirk*, 76 Md. 46; *Bealey* v. *Shaw*, 6 East. 213; *Washburn's Easements and Servitudes*, 283.

5. The purchase of the land, including the spring, gave the defendant the right of a riparian owner ; but that the rights of a riparian owner gave it the right to carry the water a mile or more to supply the town of Aberdeen with water, is a proposition so palpably erroneous that it would be a waste of time to discuss it. *Lord* v. *Water Co.*, 135 Pa. St. 122; *Haup's Appeal*, 125 Pa. St. 211.

6. The action is for taking the water away from the spring after it had reached there, after it had become part of an open, running stream. That a suit will lie for such a diversion seems to be well settled. *The Village of Delhi* v. *Youmans*, 45 New York, 362.

PAGE, J., delivered the opinion of the Court.

This is an action to recover damages for the alleged diversion of a stream of water from the land of the plaintiff, who is here the appellee.

The original *narr.* contained but one count ; subsequently a second was added ; and during the trial on leave of the Court, an amended *narr.* was filed. As appears by the record the leave was asked and granted, not to amend by filing an

additional count, but only to "file amended *narr.*" In such case the original *narr.* must be held to be withdrawn. *Mitchell* v. *Williamson*, 9 Gill, 77; *Poe's Practice*, sec. 189.

The amended *narr.* alleges substantially that the appellee was seized and possessed of a certain farm, that the appellant was seized of another tract on which there were certain springs or "runs of water," which water had been used and accustomed to run, "in great plenty and abundance for the supply of a certain stream, which ran down and over the appellees tract; and that the appellant in the year 1897, wrongfully dug, built and made an intake well" on its property, and thereby diverted and turned the streams out of the water course through the appellee's land, and pumped the water from said well away from the appellee's property; and from that time diverted it away from the close of the appellee so that the said farm of the appellee was not sufficiently supplied with water, and the appellee could not conduct his said farm nor his canning house thereon situate with profit and advantage. This presented a good and sufficient cause of action. The appellee being a lower riparian proprietor had a right to the natural stream of water flowing through his lands in its ordinary natural state, both as to quantity and quality as incident to the right to the land on or through which the water runs; *Balto.* v. *Warren Manufacturing Co.*, 59 Md. 103; and a diversion of the water by the upper proprietor from its natural channel whereby the lower proprietor was deprived of its use, is a legal injury for which an action may be maintained. *Colrick* v. *Swinburne*, 105 N. Y. 506. The demurrer of the appellant was therefore properly overruled.

The defendant then filed four pleas, the first, second and third of which set up in various forms the Statute of Limitations. Of these the third was properly stricken out on demurrer. The fourth plea alleged as a bar to the action, that the springs on the appellant's property which supplied the streams on the appellee's lands were "not surface streams or defined water-courses, but were underground streams percolating through the soil of the appellant's land, with no defined or

regular course or channel." Issues having been joined, the trial was had, and the verdict and judgment being for the appellee this appeal was taken.

Four bills of exception were reserved by the appellant; three to the admission of evidence and one other to the action of the Court in granting the first and fifth of the ap-appellee's prayers and in refusing the appellant's fifth, sixth, eighth, ninth, eleventh, twelfth, thirteenth and fourteenth prayers.

There seems to have been no serious objection as to the correctness of the proposition contained in the appellee's first prayer as a general rule. No attack upon it in that respect was made in the briefs or in the argument. And if there had been, it could not be successfully assailed upon that ground. There had been evidence offered tending to show that the appellant in the construction of the intake well had intercepted the underground channel that supplied the spring, which was the source of the stream flowing through the appellee's land, and had diverted the water to the well, from thence, by pumping, to the town; and that by these means the water was diverted from its natural channel. The only ground upon which the appellant objected to it was that under the facts of the case the plea of limitations interposed a bar to the appellees recovery, and that the prayer was defective in that the jury was not so instructed.

Whether that contention can be maintained or not depends upon the character of the damage and the time of the commission of the act that was the cause of the injury. The appellant insists that the origin of the injury to the appellee's land was the construction of the reservoir or the intake well, whereby the spring was totally destroyed; that all of the damage occurred at that time; and that the reservoir being of a permanent character the injury is not a continuing nuisance, but one of a permanent character, which created but a single cause of action in which all damages past, present and future, must be recovered. If this statement of the law be applicable, the appellant further contends that inasmuch as the creation

of the reservoir was the cause of the nuisance the Statute of
Limitations begins to run from the time of the completion of
the works, and it has offered evidence tending to show that it
was completed more than three years before the bringing of
this suit.

Before discussing the legal theory upon which this conten-
tion is based, it must first be determined what the cause of the
injury was and whether the construction of the intake well was
the proximate cause of the injury.    The mere fact of the diver-
sion by the appellant of the water from the spring to the reser-
voir on its own land is obviously not sufficient unless it can
be shown that the work itself caused the diversion of the water.
It was said in *Pa. R. R. Co.* v. *Miller*, 112 Pa. 34, and it is
well settled, that " the upper riparian proprietor has the right
to the use of the stream on his land for any legal purpose,
provided he returns it to its channel uncorrupted and without
essential diminution." *Rudolph* v. *Pa., Schuykill V. R. R. Co.*,
47 L. R. A. 786; s. c., 186 Pa. St. 541.    But we do not think
there was evidence from which the jury could draw the infer-
ence that the construction of the works *per se* was the cause
of the injury.    The plant of the defendant consisted of an
intake well or reservoir into which the water was collected,
and pumped therefrom to a standpipe and from thence was
distributed to the town.    The intake well is fifteen feet deep,
lined with stone masonry.    Its walls rise six or nine inches
above the level of the ground.    It has no outlets, other than
an overflow pipe a few inches below the top of the wall, and
a ten inch pipe three feet from the bottom, through which the
water is pumped to the standpipe, thirty four feet distant.    The
water enters the well from the bottom.    The spring that sup-
plied the stream with the water which flowed through the ap-
pellees land, was a few feet distant from the well.    The loca-
tion of the spring and also of the well, is upon higher ground
than the bed of the stream, so that the water from the plant
runs down and joins the water that comes from the spring.
This was conceded at the argument, and even if it had not
been, it is apparent from the evidence.    It was clearly shown

that the waste water from the pump runs through a channel down to the bed of the stream and thence on through the appellees land, and one of the plats shows that water from the overflow pipe in the well, would take the same course. There is also proof that the water in the well, unless pumped out, would rise to the overflow pipe. Mr. Bradford testifies that "he had been up at the reservoir when there was water coming out of the overflow pipe." The spring itself, was not included in the works; it was some feet distant; but it was filled up a few feet deep in the grading thereabouts. It is clear that the immediate diversion of the water was to the reservoir upon the land of the appellees, and this as we have shown did not confer upon the appellees any right of action, unless the effect of it was to deprive the stream through the appellees land of its accustomed quantity of water.

It also appears that after the construction was completed there remained two outlets for the water from the earth; one through the spring, the other through the outlet pipe in the well. If the latter were lower than the spring, the water from the well would flow out of the overflow pipe, back again into its accustomed channel, unless prevented from doing so by the action of the pump. On the other hand, if the spring were lower than the overflow pipe, unless interfered with by pumping, the water would always flow out of the spring, that being under the assumption the lowest exit. In either of these hypotheses, unless the pump took it from the well, the water would flow through the appellees property without loss in quantity or quality. For these reasons it seems to be clear the water was diverted from the appellees premises not by the mere construction of the well, but by the daily pumping, whereby it was taken out of the well and distributed through the standpipe to the town. And if this be so, the plant itself was not the proximate cause of the injury to the appellant, but it was the use to which the water was put by the appellant, after it came into the well. In such case the nuisance is continuing, for which no damage can be recovered until it has actually arisen, because the injury itself depends upon the

use to which the work is applied and therefore until the injury has happened it is yet contingent.   This principle is firmly established.  It was well stated in the case of *The Town of Troy* v. *Cheshire Railroad Co.*, 23 N. H. 102, as follows :   "A person erects a dam upon his own land which throws back water upon his  neighbors land ;  he will be answerable for all damage which  he  has  caused before the date of the writ, and ordinarily for  no  more,  because  it is as yet contingent and uncertain whether any further damage will be occasioned or not ; because such a dam is not, of its own nature and necessarily, injurious to  the  lands  above,  since  that depends more upon the  manner,  in  which  the  dam  is used, than upon its form. But if such a dam, is in its nature of a permanent character, and  from  its  nature  must  continue  permanently  to  affect the value of the land flowed, then the entire injury is at once occasioned  by  the  wrongful  act,  and  may  be  at once recovered  in  damages. "    All  the  cases  cited  by  the  appellant rest upon the same principles.    They hold that if the nuisance is  a  permanent  structure  of  such  a  character  that its continuance is necessarily an  injury then the damage is original  and may  at  once  be  fully  estimated  and  compensated,  but if the injury  be  not  of  this  nature  the continuance of the nuisance is  a  continuance,  for  which  a  recovery  may  be  had  and damages  recovered.    *Stoghill* v. *C. B. & Q. R. Co.*, 53 Iowa,  343; *Powers* v. *Council Bluffs*, 45 Iowa, 655; *Staple* v. *Spring*, 10 Mass. 72; *C. & A. R. R. Co.* v. *Maher*, 91 Ill.  317; *Fowle* v. *New  Haven  and  Northampton  Co.*, 107 Mass. 354; *Darley  Main  Colliery  Co.* v. *Mitchell*, 11 App. Cas. 127.

It follows from what we have said that there are no facts in the case by whicn the plea of limitations can be made to apply.   There  was  no  error  therefore  in  granting  the plaintiff's  first  prayer  and  rejecting  the eighth, ninth, tenth, eleventh,  twelfth,  thirteenth  and  fourteenth  prayers of the defendants.

The plaintiff's fifth prayer was properly granted.   The appellees  were  entitled  to  recover  all  the damages that directly

resulted by reason of the diversion of the water.   There was evidence tending to show permanent injury to the land and the appellee was also entitled to recover her loss in that respect. *City, &c.* v. *Merryman*, 86 Md. 594. LORD HALSBURY in *Darley Main Colliery* v. *Mitchell*, 11 App. cases 127, said : "That for one cause of action you must recover all damages incident to it by law once and forever."

The defendants fifth prayer directs the jury that in estimating "any damages they may believe she has sustained, by the defendant's use of the water," they can only consider what amount of water, but for the defendant's act would have flowed into the stream "from a surface spring or defined water course," and "if they find the defendant returns to the plaintiff's stream in the use it makes of such water and if they believe it returns to the plaintiff a flow of water in equal respects to what she would receive if the defendant would not use any of said water," then they may find nominal damages for the diversion of the water.   This prayer seems rather difficult to be understood.   If it means to submit a case where the jury found that the appellants returned as much water to the appellee's stream as would have flowed there, but for the act of the appellant, then there would be no diversion, and the conclusion ought to have been to direct a verdict for the appellants.   If, however, it was intended to direct that if notwithstanding the diversion from the spring, the appellants opened up new sources of supply whereby the appellee received as much water as she did before, then the rules of damage laid down would be incorrect.   The appellee's right is to receive the water that was accustomed to flow through her property, and the appellants have none to deprive her of that, though they brought other water from a new source to supply its place.   *Ware* v. *Allen*, 140 Mass. 513.   The prayer was therefore properly rejected.

The exceptions first, second and third being to the admission of evidence were not pressed at the argument.   The questions applicable to them, are already disposed of by what has been said.   All the evidence tended to show what the

permanent injury to the land was, and was properly admitted.

The judgment must be affirmed.

> *Judgment affirmed, with costs to the appellees.*

(Decided March 6th, 1902.)