577 A.2d 64

**Elizabeth C. JONES, et al.,**

v.

**William G. SPEED, III, M.D.**

**No. 6, Sept. Term 1989.**

Court of Appeals of Maryland.

Aug. 2, 1990.

Brian D. West, Sandground Smolen Barondess West & Plevy, P.C., all on brief, Vienna, Va., for appellants.

Carol A. Zuckerman, William B. Whiteford, Whiteford, Taylor & Preston, all on brief, Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL *, JJ., and JAMES F. COUCH, Jr.,** Retired, Specially Assigned, J.

McAULIFFE, Judge.

This case involves the effect of Maryland's statute of limitations upon a medical malpractice claim. Some of the questions presented by the parties may be determined by reference to existing principles in the law of limitations. Other questions generated by an alternative approach ad-

---

\* Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

\*\* Couch, J., participated in the hearing of the case and in the conference in regard to its decision, but died prior to the adoption of the opinion of the Court.

vanced by the plaintiffs require consideration of the rule of *res judicata* and of the prohibition against splitting a cause of action.

## I.

On 24 July 1986, Elizabeth C. Jones and her husband filed a claim in the Health Claims Arbitration Office against Dr. William G. Speed, III, alleging negligent failure to properly diagnose Mrs. Jones's condition. The defendant moved for summary judgment, contending the claim was barred by the five year limitation provision of Maryland Code (1974, 1989 Repl.Vol.), § 5–109(a) of the Courts and Judicial Proceedings Article. Specifically, the defendant argued that if he had been negligent in his care of the plaintiff, that negligence must have occurred during the initial visit of 17 July 1978, which was more than eight years before the complaint was filed. Accordingly, he posited, that action was not brought within the absolute limitation of "[f]ive years of the time the injury was committed" as required by § 5–109(a)(1). The Chairman of the Health Claims Arbitration Panel granted the defendant's motion, finding as a matter of law that the injury occurred on 17 July 1978, and therefore, that the action was barred by the statute of limitations.

The plaintiffs filed a notice of rejection of the order of the panel chairman, and concurrently filed a complaint against the defendant in the Circuit Court for Baltimore City. The complaint contained 17 counts. In the first count, Mrs. Jones alleged that Dr. Speed was negligent on 17 July 1978, the date of her first visit with him, in failing to diagnose the presence of a brain tumor and in failing to order tests that would have disclosed the presence of the tumor. In counts two through 16, Mrs. Jones incorporated by reference the allegations of negligence she had set forth in the first count, but in each of the later counts alleged a different date on which the act of negligence occurred. These dates, beginning with 3 August 1978 and ending with 16 September 1985, corresponded to the visits of Mrs. Jones to Dr.

Speed during the time she was under his continuous care for the condition that first brought her to him. The 17th count was a joint claim for loss of consortium, and incorporated the allegations of the preceding counts.

The defendant answered and moved for summary judgment, again relying on § 5–109 as a complete bar to the action. In their memorandum filed in opposition to the motion, the plaintiffs argued that 1) section 5–109 violates the "right of access" provision of Article 19 of the Maryland Declaration of Rights and, 2) in any event, not all of the plaintiffs' claims are barred by the statute because in some of their counts they have alleged actionable negligence occurring within five years of the bringing of the action. After a hearing, Judge Thomas E. Noel granted the motion and entered final judgment in favor of the defendant. Plaintiffs appealed that judgment to the Court of Special Appeals, and we issued a writ of certiorari on our own motion before action by the intermediate appellate court.

## II.

In their brief, plaintiffs posed the question:

Is § 5–109 of the Courts and Judicial Proceedings Article of the Maryland Code unconstitutional as being violative of Article 19 of the Maryland Declaration of Rights?

We answered this precise question in the negative in *Hill v. Fitzgerald*, 304 Md. 689, 700–705, 501 A.2d 27 (1985). Nothing that these plaintiffs have argued persuades us to change that ruling.

## III.

■ The more novel and interesting issues raised by plaintiffs grow out of their contention that Dr. Speed committed medical malpractice not only on the occasion he first saw Mrs. Jones, but on subsequent occasions as well. The facts upon which the plaintiffs rely are as follows.

Beginning in 1975, Mrs. Jones suffered from severe and often debilitating headaches. On 17 July 1978, she consulted Dr. Speed, who held himself out as an expert in the speciality of evaluating, managing, and treating headaches. Although Mrs. Jones discussed with Dr. Speed her concern that her problems might be related to an intracranial abnormality, the doctor did not order or obtain a Computerized Axial Tomography study (CAT scan) or other diagnostic study. Dr. Speed's records of the first visit contained the following note:

> I doubt that she has any underlying organic intracranial abnormality, but I think she's concerned about this possibility and if we do not control her reasonably soon, a CAT scan will be obtained.

Mrs. Jones returned to Dr. Speed for a follow-up diagnostic evaluation on 3 August 1978, at which time the matter of ordering a CAT scan as a diagnostic tool in evaluating Jones' condition was again discussed. Dr. Speed's notes indicated:

> I have discussed the pros and cons of a CAT scan and at the moment I see no reason to pursue this. She seems to have good insight and I think believes that the explanation as given her is correct.

Mrs. Jones continued under the care and treatment of Dr. Speed until 16 September 1985. During this time, Dr. Speed saw her approximately every six months, comprising 16 visits. Mrs. Jones continued to suffer from severe headaches on a regular basis, including nausea and vomiting. At no time during the period of treatment did Dr. Speed order a CAT scan or X-ray or other diagnostic study of Mrs. Jones' brain.

Mrs. Jones suffered a nocturnal seizure on 13 February 1986. A neurologist ordered a CAT scan, which revealed a calcified right frontal parasagittal tumor. The brain tumor was surgically removed. Mrs. Jones was discharged from the hospital on 1 March 1986, and has been free of headaches and related symptoms since the excision of the tumor.

The plaintiffs filed their claim against Dr. Speed on 14 July 1986. Section 5–109 requires [1] that:

An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider ... shall be filed within the earlier of:

(1) Five years of the time the injury was committed; or

(2) Three years of the date the injury was discovered.

For purposes of this appeal, the defendant admits that the plaintiffs filed their claim within three years of the date the injury was discovered. He contends, however, that the injury that is the gravamen of the complaint occurred on 17 July 1978, at the first visit when the initial misdiagnosis was allegedly made. Because more than five years elapsed between that injury and the filing of the claim, he argues, the claim is barred.

Dr. Speed is correct in his assertion that if one accepts the allegations of the plaintiffs, negligence producing an "injury" within the meaning of the statute occurred on 17 July 1978. *See Hill v. Fitzgerald, supra,* 304 Md. at 694–97, 501 A.2d 27; *Oxtoby v. McGowan,* 294 Md. 83, 93–99, 447 A.2d 860 (1982). Claims for that medical injury are therefore barred by § 5–109(a)(1).

There remains the question of whether subsequent conduct of the defendant, alleged to have produced its own injury and damages, which occurred within five years of the filing of the claim, may be made the subject of an action that does not run afoul of the statute of limitations. The theory of the plaintiffs is rather straightforward. They do not retreat from their assertion that Dr. Speed was negligent on 17 July 1978 when he failed to order a CAT scan or other radiographic studies and failed to diagnose the presence of Mrs. Jones's brain tumor. They argue, however, that each time Mrs. Jones returned to Dr. Speed with unabated complaints of her chronic symptoms, the doctor

---

1. The statute contains exceptions that are not applicable to this case.

had a duty to reconsider his original diagnosis, and to obtain additional diagnostic studies. The breach of that duty, they urge, constitutes negligence.

The plaintiffs support this contention with the affidavit of Dr. Ronald J. Bortnick, the neurological surgeon who removed Mrs. Jones's tumor. Dr. Bortnick's affidavit states, in part:[2]

> It is my opinion that if a CT Scan had been performed by Mrs. Jones' doctor, Dr. Speed, at any time during their eight year professional relationship, that the brain tumor would certainly have been detected.

> Each time that Mrs. Jones saw Dr. Speed, a separate medical injury occurred, because of the failure of Dr. Speed, at each of these visits, to detect a progressively worsening and changing medical condition.

> Each severe and prolonged headache, and the final seizure, grew out of a series of medical injuries directly caused by the carelessness of the treatment administered by Dr. Speed.

To round out their claim of actionable negligence, the plaintiffs argue that each such breach of duty proximately caused harm that is readily identifiable. For example, had Dr. Speed correctly diagnosed Mrs. Jones's condition on 10 September 1981, (the date of a visit alleged in count 10 of the complaint) the successful surgery that was performed in 1986 would have been accomplished at the earlier time, and the pain, suffering, disability, and expense suffered from late 1981 until 1986, would have been avoided.

The defendant argues in opposition to this theory of liability that to accept it would be to resuscitate the "continuous course of treatment rule" which we found no longer viable in *Hill v. Fitzgerald, supra,* 304 Md. at 700, 501 A.2d 27. Our recognition of this portion of plaintiffs' claim

---

2. The defendant has not challenged the form of Dr. Bortnick's affidavit. *See* Maryland Rule 2–501(c), and *Fletcher v. Flournoy,* 198 Md. 53, 81 A.2d 232 (1951), *cert. denied,* 343 U.S. 917, 72 S.Ct. 649, 96 L.Ed. 1331 (1952).

would have no such effect. As Chief Judge Murphy pointed out for the Court in *Hill v. Fitzgerald, supra,* the continuing treatment rule, when applicable, tolled the statute of limitations by delaying the accrual date of undiscoverable medical malpractice until the termination of treatment. *Id.* at 698, 501 A.2d 27. If that rule were applicable here, the plaintiffs' claim would not be barred as to any act of negligence occurring during the course of treatment, including the original visit of 17 July 1978. That is not the case. If plaintiffs are permitted to proceed on their theory of liability, they will not be able to hold Dr. Speed responsible for acts of negligence that occurred more than five years before 14 July 1986, the date they filed their claim.[3] The continuous course of treatment rule remains lifeless in Maryland.

Dr. Speed also argues that acceptance of the plaintiffs' theory would frustrate the legislative intent to provide absolute protection to health care providers for acts of negligence occurring more than five years before the bringing of an action. Again, we disagree. As we pointed out above, if the plaintiffs are correct, they will be entitled to recover damages *only* for acts of negligence occurring within five years of the filing of their claim. Claims for damages occurring at an earlier time, and resulting from earlier acts of negligence on the part of the defendant, are effectively barred by § 5–109(a)(1).

Dr. Speed also argues that this action cannot be brought because of the long-standing prohibition against splitting a cause of action. In *Ex Parte Carlin,* 212 Md. 526, 532–33, 129 A.2d 827 (1957), this Court stated the general rule:

> It is well established that a single cause of action or an entire claim cannot be split up or divided and separate suits maintained for the various parts thereof. A judg-

---

**3.** Maryland Code (1974, 1989 Repl.Vol.) § 5–109(d) of the Courts and Judicial Proceedings Article provides that the filing of a claim with the Health Claims Arbitration Office shall be deemed the filing of an action for purposes of the statute of limitations.

ment or decree in a suit for a part only of a single cause of action or entire claim permits *res judicata* to be successfully relied on if the remainder is sued on later. The rule is intended to prevent multiplicity of litigation and to avoid the vexation, costs and expenses incident to more than one suit on the same cause of action. Its bases are the maxims 'that it is the interest of the State, there should be an end to litigation' and that 'no man should be twice sued for the same cause.' *Whitehurst v. Rogers,* 38 Md. 503, 513; 1 *C.J.S., Actions,* p. 1308; *Rosenstein v. Hynson,* 157 Md. 626 [147 A. 529 (1929)].

More recently, in *Levin v. Friedman,* 271 Md. 438, 445, 317 A.2d 831 (1974), this Court said:

[t]he rule is that rights cannot be enforced in piecemeal fashion, that a single cause of action or an entire claim cannot be split up or divided and separate suits maintained for the various parts thereof.

*And see Singer v. Steven Kokes, Inc.,* 39 Md.App. 180, 184, 384 A.2d 463 (1978) (suggesting exception to the general rule where plaintiff neither knew nor should have known of facts forming the basis of the later suit when the earlier suit was brought).

Dr. Speed points out that if the plaintiffs could have brought an action for his alleged negligence of 17 July 1978, that action would necessarily have included damages for all subsequent harm resulting from the failure to diagnose the presence of Mrs. Jones's brain tumor. That action, whether successful or unsuccessful, would have barred subsequent action for damages that could have and should have been litigated in the original claim. Accordingly, the defendant argues, because the first action is barred, all actions which would have been barred if the first action had been brought and pursued to judgment should likewise be barred.

The initial premise upon which the defendant's argument is based is sound. Had these plaintiffs been able to bring an action alleging the defendant's negligence on 17 July 1978, and had that action been prosecuted to judgment, the

doctrine of *res judicata* and the closely related rule against splitting a cause of action would have effectively prohibited a subsequent action of the kind now sought to be maintained for the alleged acts of negligence occurring within the statutory five year period. *See Shum v. Gaudreau,* 317 Md. 49, 54, 562 A.2d 707 (1989) (judgment between same parties and their privies is a final bar upon the same cause of action and is conclusive, not only as to all matters that were decided in the original suit, but also as to all matters which with propriety could have been litigated in the first suit). *See also Welsh v. Gerber Products,* 315 Md. 510, 516, 555 A.2d 486 (1989); *MPC, Inc. v. Kenny,* 279 Md. 29, 32, 367 A.2d 486 (1977); *Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92 (1961); *Ex Parte Carlin, supra,* 212 Md. at 532–35, 129 A.2d 827. The claims of subsequent acts of negligence, and the resulting damages, are, on the facts of this case, so intertwined with a claim which might have been brought for the original misdiagnosis that it would be improper to allow a second action after the first had been prosecuted to a conclusion.

That does not mean, however, that the later, and related, cause of action is barred if the first action was never brought or prosecuted to judgment. As this Court said in *Surrey Inn, Inc. v. Jennings,* 215 Md. 446, 454, 138 A.2d 658 (1958), "[i]t is fundamental to the application of the doctrine of *res judicata* that there must previously have been some final adjudication." There has been no prior final adjudication in this case.

The rule against splitting a cause of action does not mean that a plaintiff may never split a cause of action. It means that if a cause of action is split, certain consequences may follow. A party involved in a motor vehicle accident may sustain both personal injuries and property damages. That party may bring an action for one aspect of damages and not the other, but the prosecution of that action to judgment will preclude a subsequent action for the remaining type of damage. *Dill v. Avery,* 305 Md. 206, 215, 502 A.2d 1051 (1986).

■ The rule of *res judicata* and the prohibition against splitting a cause of action are "intended to prevent multiplicity of litigation and to avoid the vexation, costs and expenses incident to more than one suit on the same cause of action." *Ex Parte Carlin, supra,* 212 Md. at 533, 129 A.2d 827. The bases of the rule are "the maxims 'that it is the interest of the State, there should be an end to litigation' and that 'no man should be twice sued for the same cause.' " *Id.* Permitting the plaintiffs to maintain a single action for negligence does not run afoul of these maxims, nor of the spirit of the rules relating to *res judicata* and the splitting of a cause of action[4]. Nor does it offend the language or the spirit of the applicable statute of limitation if the action is limited to acts of negligence occurring within five years of the commencement of the action (and within three years of the date the injury was discovered).

Dr. Speed contends that if the plaintiffs are permitted to split their cause of action in the manner contemplated, there would be nothing to prevent them from bringing one suit after another, simply by changing the date of negligence that is alleged. The defendant is wrong—application of the established principles of *res judicata* which we have discussed provides complete protection against that possibility.

There is a potential problem, however, inherent in the manner in which these plaintiffs have structured their complaint. They have alleged in separate counts each act of negligence associated with each visit to Dr. Speed. Because counts one through nine relate to acts of negligence occurring more than five years before the plaintiffs' claim was filed, those counts are barred. Count 10 alleges negligence

---

4. The splitting of the cause of action in this case may be imperfectly analogized to the acceptable splitting of causes of action in temporary nuisance cases. Where a nuisance is temporary and abatable, every repetition of the wrong creates further liability and creates a new cause of action, and a new statute of limitations begins to run after each wrong perpetuated. *See Aberdeen v. Bradford,* 94 Md. 670, 51 A. 614 (1902); *Rapf v. Suffolk County of New York,* 755 F.2d 282, 290–91 (2d Cir.1985).

on 10 September 1981, and counts 11 through 16 allege negligence on subsequent visits. None of these counts is barred by the statute of limitations. Presentation of these counts to the jury as separate claims would be confusing, however, and could result in inadvertent compounding of damages.

Because the principles of *res judicata* and the prohibition against splitting a cause of action are fully applicable to bar a subsequent action, and the plaintiffs are obliged to join their related claims in this action or lose them, the better practice would be to state a single count alleging the negligence of the defendant on and after 10 September 1981, and to add an additional count stating their joint claim for loss of consortium. The same result could, of course, be reached by the manner in which the case is presented to the jury, without the necessity of amending the pleadings, but we think the better practice would be to amend the complaint after remand.

## IV.

We find no legal impediment to the plaintiffs proceeding with their claim that the defendant was negligent on and after 10 September 1981, thereby causing them damages. The defendant concedes, for purposes of this appeal, that the claim was brought within three years of discovery of injury; and, it is clear that the claim was brought within five years of the time the injury was alleged to have been committed. The statute of limitations is therefore not a bar. *Res judicata* is not a bar because there has been no prior adjudication of this claim or any part of it.

Of course, the plaintiffs must prove that Dr. Speed committed a separate act of negligence on or after 10 September 1981, as alleged, and not simply that the plaintiffs continued to suffer damages by reason of some earlier negligence. There may well be a division of opinion among medical experts as to whether Dr. Speed had a duty to re-examine his diagnosis or to request additional diagnostic

studies at those stages of his treatment, and whether he was negligent in failing to do so under the circumstances of this case. Those questions, however, are for the trier of fact. Through the affidavit of Dr. Bortnick, the plaintiffs have demonstrated their ability to produce expert testimony that would justify a finding in their favor on that issue, and thus the entry of summary judgment was inappropriate as to those counts alleging acts of negligence on and after 10 September 1981.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED AS TO COUNTS ONE THROUGH NINE OF THE COMPLAINT; JUDGMENT VACATED AS TO COUNTS 10 THROUGH 17 AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID ONE–HALF BY APPELLANTS AND ONE–HALF BY APPELLEE.