940 F.2d 652
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Janet L. ROWLAND, Donald E. Rowland, Plaintiffs-Appellants,
v.
Donald A. PATTERSON, M.D., Tom J. Altizer, M.D., Michael A.
Winslow, M.D., Robert K. Hobbs, M.D., Robert J.
Cirincione, M.D., Defendants-Appellees.
 No. 90-1074.
 United States Court of Appeals, Fourth Circuit.
 Argued March 4, 1991.
Decided Aug. 15, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Norman P. Ramsey, District Judge. (CA-87-1560-R)
 LaVonna Lee Vice, Ellin & Baker, Baltimore, Md. (Argued), for appellants; Marvin Ellin, Ellin & Baker, Baltimore, Md., on brief. Kathleen Howard Meredith, Semmes, Bowen & Semmes, Baltimore, Md. (Argued), for appellees; Mary Love Mezzanotte, Semmes, Bowen & Semmes, Baltimore, Md. (on brief), for appellees Patterson, Altizer, Winslow & Hobbs;
 Conrad W. Varner, G. Randall Whittenberger, Miles & Stockbridge, Frederick, Md. (on brief), for appellee Cirincione.
 D.Md.
 AFFIRMED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and W. EARL BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 Janet and Donald Rowland appeal the district court's dismissal by summary judgment of their medical malpractice action on the ground that it was barred by the statute of limitations. The Rowlands principally contend that the district court erred in determining the date on which their claims against the defendants accrued. We disagree and affirm.
 
 
 2
 * In May 1982, Janet Rowland sought treatment from Dr. Donald Patterson for a back injury she had sustained in a car accident. Dr. Patterson recommended surgery, and told Mrs. Rowland that following surgery she would be out of the hospital within two weeks and would be able to return to work in six weeks. On June 3, 1982, Mrs. Rowland underwent back surgery at the Washington County Hospital. Dr. Patterson performed this surgery, during the course of which Mrs. Rowland's right iliac artery and vena cava were lacerated.
 
 
 3
 Because of the lacerations, Mrs. Rowland was taken back to the operating room for an arteriogram the next morning. The arteriogram indicated that Mrs. Rowland had to undergo emergency surgery to repair the damaged blood vessel. Dr. Su, a vascular surgeon, performed this surgery on June 5, 1982. After the procedure, Dr. Su discussed Mrs. Rowland's condition with Mr. Rowland. Dr. Su told Mr. Rowland that his wife had almost died, and that her worsened condition after the back surgery was caused by Dr. Patterson's puncturing of the vena cava. J.A. at 454-56. Mrs. Rowland also learned at that time of Dr. Patterson's puncturing of the vena cava. J.A. at 325-26.
 
 
 4
 After Dr. Su's surgery, Mrs. Rowland remained in bad condition--paralyzed from her waist down. Sometime before June 11, 1982, she therefore consulted Dr. Carey, a neurosurgeon. Dr. Carey told her that further surgery was needed, indicating that her vena cava had been cut during Dr. Patterson's surgery. By Mrs. Rowland's admission, therefore, she knew at the time she consulted with Dr. Carey, some time before June 11, 1982, that something had gone wrong during Dr. Patterson's surgery. J.A. at 331 (deposition testimony). On June 11, 1982, Dr. Carey performed the surgery. After that procedure, Mrs. Rowland still felt numb from her waist down. Her condition did not begin to improve until she started physical therapy.
 
 
 5
 Mrs. Rowland was discharged from the hospital on July 23, 1982, seven weeks after Dr. Patterson's initial surgery. At that point, her condition remained poor, as she had no feeling from her waist to her feet. She also had to take medication to control her bladder and her bowels. Because of her medical problems, Mrs. Rowland could not return to work.
 
 
 6
 In March 1983, following the advice of a general practitioner, Mrs. Rowland sought the opinion of Dr. Ducker at the University of Maryland hospital. After studying Mrs. Rowland's condition, Dr. Ducker concluded that Mrs. Rowland suffered from multiple lower nerve dysfunctions caused by the injuries she sustained during Dr. Patterson's surgery. Dr. Ducker also told the Rowlands that Mrs. Rowland's complications were caused by medical malpractice, and he suggested a lawsuit against Dr. Patterson. The Rowlands did decide to file suit, but waited until July 16, 1985 to do so. At that time, they sued Dr. Patterson and various other members of the Washington County Hospital staff as of the date of Patterson's surgery, claiming personal injury and loss of consortium.
 
 
 7
 After discovery, the district court granted the defendants' motion for summary judgment, concluding that as a matter of law the action was time-barred. Specifically, the court held that under Maryland law, controlling in this diversity action, the Rowlands' malpractice claims accrued no later than June 12, 1982, following Dr. Carey's surgery, and was barred by Maryland's three-year medical malpractice "discovery" statute.
 
 
 8
 This appeal followed.
 
 II
 
 9
 Under Md.Cts. & Jud.Proc.Code Ann. Sec. 5-109(a), [a]n action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider ... shall be filed within the earlier of: (1) five years of the time the injury was committed; or (2) three years of the date the injury was discovered.
 
 
 10
 It is undisputed that in this case Sec. 5-109(2), the three years from date of discovery statute of limitations applies, as the shorter of the two limits. The questions are (1) when, as a matter of Maryland law, is discovery deemed to have occurred, hence the claim for medical malpractice to have accrued?; and (2) when, under the proper discovery rule, did discovery, hence accrual, occur here?
 
 
 11
 Under Maryland law, discovery occurs when the claimant first has either actual knowledge of the wrong or sufficient information to cause a reasonable person to investigate the possibility of wrong, in which case the person is charged with knowledge of all the facts that would have been discovered by a reasonably diligent investigation. See Poffenberger v. Risser, 431 A.2d 677, 680-81 (Md.1981) ("the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong."); Lutheran Hospital v. Levy, 482 A.2d 23, 29 (Md.App.1984) ("The crucial date is the date the claimant is put upon inquiry, not the date an expert concludes there has been malpractice.").
 
 
 12
 Applying these discovery principles, the district court concluded that on the undisputed facts of record, the Rowlands were on inquiry notice by the time Mrs. Rowland discussed her condition with Dr. Carey following his surgery on June 11, 1982. The district court summarized the Rowlands' knowledge as of that time as follows:
 
 
 13
 In addition to experiencing the harmful effects of Dr. Patterson's surgery, both plaintiffs were provided an explanation for their unanticipated difficulties. Dr. Su explained to Donald [Mr. Rowland] that Janet's [Mrs. Rowland] worsened condition was the result of damage to the vena cava, which had been inadvertently lacerated during Dr. Patterson's surgery. Dr. Carey confirmed Dr. Su's findings to Janet during his consultations with her following the June 11, 1982, surgery. Thus, by mid June at the latest, the Rowlands knew the following: Janet's surgery had gone badly; she required three additional procedures to correct the errors of Dr. Patterson's initial surgery; and they were both told that an unusual event, laceration of the vena cava, had caused her problem.
 
 
 14
 Rowland v. Patterson, Civil Action No. R-87-1560, slip op. at 8 (D.Md. July 16, 1990).
 
 
 15
 The Rowlands contend that this conclusion was not warranted as a matter of law on the summary judgment record, that there was evidence from which a trier of fact could have found instead that discovery only occurred when Dr. Ducker first directly suggested Dr. Patterson's fault in March of 1983. As the district court correctly pointed out, however, Dr. Ducker did not provide the Rowlands with any new facts--his conclusion that malpractice had occurred was based on information the Rowlands already had available to them. While the Rowlands obviously did not have the expertise of Dr. Ducker, they did have sufficient information by June 12, 1982 to cause a reasonable person to investigate further to see if malpractice had occurred. The district court therefore did not err in concluding that discovery, for purposes of the statute of limitations, occurred no later than June 12, 1982.
 
 
 16
 In a fall-back position, the Rowlands argue that the Maryland continuous treatment doctrine tolls the statute of limitations. In Maryland, however, the old common law continuous treatment rule has been held not to survive the discovery rule of Sec. 5-109(2), which controls here. Hill v. Fitzgerald, 501 A.2d 27, 32 (Md.1985) ("provisions of Sec. 5-109 ... are plainly inconsistent with the survival of the continuing treatment rule").
 
 III
 
 17
 The Rowlands argue that even if we affirm the district court's grant of summary judgment as to malpractice claims against Dr. Patterson based on his initial surgery, we should find that they have alleged "separate and independent acts of negligence that occurred up to and including January 14, 1983" that accordingly were not time-barred. Appellants' Br. at 21, citing Jones v. Speed, 577 A.2d 64 (1990). In Jones, the Maryland Court of Appeals remanded to permit the plaintiffs to amend their complaint so as to allege acts within the limitations period as discrete claims despite their discovery of earlier acts which were time-barred by the discovery rule. The original Jones complaint contained sixteen counts, each alleging that by a separate act Dr. Speed was negligent in failing to properly diagnose Mrs. Jones' condition, and a seventeenth count alleging loss of consortium. Although the first nine counts, which described Mrs. Jones' first nine visits with Dr. Speed, clearly were barred even if considered as separate "claims," by the five-year statute of limitations, the later counts, if so considered, were within the statutory period. Over Dr. Speed's objections, the appellate court affirmed dismissal of only the first nine counts and remanded to allow the Joneses to amend to specifically allege the later acts within the limitations period as one separate, discrete claim of malpractice.
 
 
 18
 In the present case, the Rowlands refer us to paragraphs 21 and 22 of their Statement in Support of Claim. J.A. at 543. These paragraphs read as follows:
 
 
 19
 21. In support of the Claimant's contention that she had not been informed by the Defendant Patterson that he had inflicted injury to her vascular system and had further ignored cauda equina compression which had been permitted to exist in the postsurgical period is the fact that she permitted the Defendant Patterson to reconfine her at the Washington County Hospital on January 14, 1983. She had an admitting diagnosis of "chronic lumbar arachnoiditis."
 
 
 20
 22. In spite of the fact that the Defendant Patterson knew or by the exercise of due care was charged with such knowledge that the Claimant's disability and pain was from permanently injured nerve roots which arose from the surgery of June 3, 1982 and his failure to promptly recognize and decompress the cauda equina immediately following manifestation of the paralysis, he nonetheless ordered traction for her. The claimant remained confined by these defendants until January 26, 1983, at which time she was discharged in essentially the same condition as she was upon her admission on January 14, 1983.
 
 
 21
 J.A. at 543. These paragraphs also appear as paragraphs 26 and 27 of Count I of the Rowlands' complaint. J.A. at 13. The Rowlands argue that, as in Jones v. Speed, these alleged acts of negligence occurring within the three-year limitations period should not be held timebarred on summary judgment.
 
 
 22
 Aside from the fact that this theory seems not to have been advanced in the district court, the allegations relied upon by the Rowlands do not, as did those of the Jones plaintiffs, arguably constitute separate discrete acts of negligence giving rise to separate claims. The first is simply an argumentative factual assertion designed to demonstrate original ignorance (non-discovery) of the injury. The second merely describes an intermediate course of treatment which is not alleged to have caused any separate, discrete injury.
 
 
 23
 By contrast, the Jones plaintiffs had alleged, and offered affidavit support for the allegation, that each of successive, separate treatments provided by their doctor had constituted the negligent infliction of distinct injury.
 
 
 24
 We are therefore not persuaded to take the course here that the Maryland appellate court thought warranted in Jones v. Speed in the interest of justice.
 
 AFFIRMED
 
 25
 MURNAGHAN, Circuit Judge, and BRITT, District Judge, joined.