46 A.3d 426

**Angelia M. ANDERSON**

v.

**UNITED STATES of America.**

**Misc. No. 14, Sept. Term, 2011.**

Court of Appeals of Maryland.

June 22, 2012.

Byron Leslie Warnken (Warnken, LLC, Towson, MD; Kerry D. Staton and Jonathan Schochor, Federico & Staton, P.A., Baltimore, MD), on brief, for Appellant.

Lewis S. Yelin, (Rod J. Rosenstein, United States Attorney, Stuart F. Delery, Acting Asst. Atty. Gen., and Thomas M. Bondy, U.S. Department of Justice, Washington, D.C.), on brief, for Appellee.

Michael Wein, Law Offices of Michael Wein, Greenbelt, MD, for Amicus Curiae brief of the Maryland Association of Justice.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and McDONALD, JJ.

HARRELL, J.

"What's in a name? That which we call a rose by any other name would smell as sweet." *Romeo and Juliet,* William Shakespeare. For most plaintiffs in medical malpractice actions in our State courts, it would not matter whether we denominate Maryland Code (1973, 2006 Repl.Vol.) Courts & Judicial Proceedings Article, § 5–109(a)(1) (addressed to the time within which a medical malpractice claim must be commenced) a statute of limitation or a statute of repose. The time period allowed for bringing a medical malpractice action under § 5–109(a)(1) is five years from the time the injury was committed, after which, the claim is barred by the passage of the time period. Thus, in a typical situation governed by Maryland law, once five years passes after the plaintiff's alleged injuries (subject to express tolling situations regarding the age of a claimant), the claim is barred whether the statute is considered one of repose or limitation.

In the unusual scenario in the present case underlying the Certified Question of Law from the federal Court of Appeals for the Fourth Circuit, the label we shall place on the statute is more than an academic exercise. The answer to that query determines whether Appellant Angelia Anderson's claim against the United States of America may proceed or is barred. Anderson brought a medical malpractice action in the United States District Court for the District of Maryland against the United States under the Federal Tort Claims Act ("FTCA").[1] The FTCA permits a plaintiff to maintain an action against the federal government if that person would have a cause of action under state law against a private person under similar conditions. *See* 28 U.S.C. § 2677 (2012). The

---

1. The Federal Tort Claims Act waives sovereign immunity of the United States for certain torts committed by federal government employees. *Kerns v. United States,* 585 F.3d 187, 194 (4th Cir.2009) (citing *Fed. Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308, 316 (1994)).

FTCA contains a two-year statute of limitations regarding the timeliness of bringing claims against the government; however, if there is substantive law in the state where the claim arose governing the timeliness of a similar claim, the state provision controls over the FTCA's statute of limitations. *Miller v. United States,* 932 F.2d 301, 303 (4th Cir.1991). Ordinarily under the FTCA, a state statute of limitations is considered to be a procedural control that limits an available remedy. *See First United Methodist Church of Hyattsville v. U.S. Gypsum Co.,* 882 F.2d 862, 865 (4th Cir.1989). A state statute of repose, which regulates also the timeliness of claims, however, is considered *substantive* law and prevails over the procedural FTCA statute of limitations. *First United,* 882 F.2d at 866. Thus, if we declare § 5–109(a)(1) to be a statute of repose, application of its substantive provisions determine the timeliness of Anderson's action. For reasons to be explained, we hold that the plain language of § 5–109(a)(1), confirmed by its legislative history, demonstrates that § 5–109(a)(1) is a statute of limitations, rather than repose.

## I. *FACTUAL AND LEGAL BACKGROUND*

■ This case reaches us as a certified question of law from the Federal Court and, therefore, we are constrained in deciding the question by the facts provided in the Certification Order. Md.Code (1973, 2006 Repl.Vol.) Cts. & Jud. Proc. Art., § 12–606; *see also Guttman v. Wells Fargo Bank,* 421 Md. 227, 230, 26 A.3d 856, 858 (2011) (citing *Piselli v. 75th St. Med.,* 371 Md. 188, 202, 808 A.2d 508, 516 (2002)). The following factual statement appears in the Certification Order from the federal appellate court:

Anderson first visited the VA Hospital [in Baltimore, Maryland] in February 2002, complaining of lower back pain. An MRI revealed scattered bone abnormalities in Anderson's lumbar spine and a radiologist recommended a bone scan, which was performed in May 2002 and showed abnormal results. Subsequently, a bone marrow biopsy was performed, resulting in a diagnosis of B-cell lymphoproliferative disease in Anderson's spine. Anderson was scheduled

to begin chemotherapy in August 2002, but her doctors determined instead that a course of observation was more appropriate. Anderson was given a fentanyl patch to control her pain. Anderson returned to the VA Hospital in September 2002, reporting continuing pain on her left side; her doctors responded by increasing her pain medication.

On December 19, 2002, Anderson complained at the VA Hospital of increased pain and new symptoms, including pain and numbness radiating to her foot. She was discharged and instructed to report to the neurology clinic four days later. Anderson returned to the VA Hospital the next day complaining of increased pain in her back and an inability to move her legs. An MRI revealed no evidence of compression. Anderson again returned to the VA Hospital on December 23, reporting an inability to walk or stand and complaining of numbness up to her breasts. She was again discharged with instructions to return for another MRI on December 26. Anderson instead sought treatment at another hospital on December 24, where a physical examination and diagnostic tests revealed an epidural spinal tumor compressing her spinal cord. Anderson underwent immediate surgery to relieve the spinal compression and remained hospitalized until December 30.

Nearly a year later, on December 17, 2003, Anderson initiated an administrative claim with Veterans Administration in Baltimore by filing a completed Standard Form 95 (Claim for Damage, Injury, or Death). She alleged that the VA Hospital failed to recognize the symptoms of progressive spinal cord compression due to an epidural spine tumor that developed as a result of her known cancer. She also alleged that the negligent care she received at the VA Hospital necessitated emergency surgery on her spine, and that, notwithstanding the emergency surgery, the VA Hospital's negligence left her with significant, permanent neurological deficits, severe and permanent disability, and incessant pain and emotional anguish.

For nearly four years, Anderson's claim proceeded through the administrative process, including significant

settlement discussion, until it was denied as not amenable to administrative resolution by letter dated September 26, 2007. Anderson filed suit in the district court on January 2, 2008. The government moved to dismiss arguing that Anderson had failed to file a claim and an expert certificate with the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO"), as required by Maryland's Health Care Malpractice Claims Act (codified at Md.Code Ann., Cts. & Jud. Proc. § 3–2A–04). The district court stayed the case to allow Anderson to file the complaint and certificate with the HCADRO. Anderson complied and the district court lifted the stay.

The government then filed a second motion to dismiss, arguing that Section 5–109(a)(1), which it characterized as Maryland's statute of repose for health care malpractice claims, divested the court of subject matter jurisdiction because Anderson did not file her federal suit within the five-year statutory period. In its order granting the motion, the district court noted that Maryland courts have referred to Section 5–109 as a statute of limitations and that it contains tolling provisions that are generally inconsistent with statutes of repose. However, the district court concluded that, "particularly in light of the recent reference by the Court of Appeals in *Burnside [v. Wong,* 412 Md. 80, 986 A.2d 437 [427] (2010) ]," it was "constrained to conclude that the state's highest court views § 5–109(a)(1) as a statute of repose." [*Anderson v. United States,* 2010 WL 1346409, *4, 2010 U.S. Dist. LEXIS 30759, *11 (D.Md.2010) ] (citing *Burnside,* 986 A.2d at 440). Thus, the district court granted the government's motion to dismiss for lack of subject matter jurisdiction.

The district court denied Anderson's subsequent motion for reconsideration, and Anderson timely appealed to this Court, assigning error to the district court's conclusion that Section 5–109(a)(1) is a statute of repose.[1]

1. Anderson also argues on appeal that the district court erred by failing to find (1) that participation in the mandatory administrative procedures required by the FTCA tolls the running of the statutory period prescribed by Section 5-109 until the administrative process is

exhausted, and (2) that the filing of a claims notice under the FTCA satisfies the requirement under Section 5–109 that an action for damages be filed within five years of the time the injury was committed. We do not certify these latter two questions.

Based on these facts, the question certified by the Fourth Circuit, and accepted by this Court, for consideration is:

Does Section 5–109(a)(1) of the Courts and Judicial Proceedings Article of the Maryland Code constitute a statute of limitations or a statute of repose?

We hold that Courts and Judicial Proceedings Article § 5–109(a)(1) is a statute of limitations, rather than one of repose. The plain language of the statute indicates to us, and its legislative history confirms, that the Maryland General Assembly did not intend, by its adoption, to create an absolute time bar or a grant of immunity for potential defendants in medical malpractice claims.

## II. OUR ANALYSIS

### A. The History and Judicial Interpretation of § 5–109

As noted by the Fourth Circuit in its Certification Order, our prior decisions sometimes refer to § 5–109 as a statute of limitations and other times as a statute of repose. In order to answer the Certified Question, we step into Mr. Peabody's time machine [2] to explore the history of the statute and clarify our sometimes confusing declarations characterizing the statute both ways.

The original version of the Maryland Health Care Malpractice Claims statute was enacted in 1975 in response to a perceived crisis in Maryland in the medical malpractice insurance industry. *See* Chapter 545 of the Acts of 1975; *Att'y Gen. of Md. v. Johnson,* 282 Md. 274, 385 A.2d 57 (1978). Section 5–109 was added to the Courts Article *"[f]or the*

---

**2.** Hector Peabody was the cartoon dog in the "Peabody's Improbable History" segments of the "Rocky and His Friends" & "Bullwinkle" television shows that ran originally in the late 1950s and early 1960s. Mr. Peabody (and his adopted boy, Sherman) would travel in his time machine to investigate and explore figures and events of the Earth's history.

*purpose of providing the statute of limitations for actions based on malpractice by physicians."* Ch. 545 of the Acts of 1975 (emphasis added). As enacted originally, § 5–109 read:

> An action for damages for an injury arising out of the rendering of or failure to render professional services by a physician shall be filed (1) within five years of the time the injury was committed or (2) within three years of the date when the injury was discovered, whichever is the shorter. In no event shall this time run against a minor until he has attained majority.

Section 5–109 was amended a year later based on recommendations from the Medical Malpractice Insurance Study Committee, which was comprised of legislators; a representative for the Governor; and members of medical, legal, hospital, and insurance interests. *Glenn v. Morelos*, 79 Md.App. 90, 92–93, 555 A.2d 1064, 1066 (1989). The Committee expressed concern about the narrowness of the 1975 version of § 5–109 because it applied only to physicians rather than to a broader class of health care providers, and also that, because the section did not apply to minors, there was a potential for a long "tail" [3] of liability. *Glenn*, 79 Md.App. at 93, 555 A.2d at 1066 (citing *Issue Report of the Legislative Study Group*, 1 (February 18, 1976) (statement of Delegate Martin S. Becker, Chairman of the Committee)). The amendments proposed as the result of the Committee's recommendations changed the statutory reference to "physician" to "a health care provider, as defined in § 3–2A–01 of this article" and replaced the last sentence of § 5–109 with "If the claimant was under 16 years of age at the time the injury was committed, the time shall commence when he reaches the age of 16." Ch. 235 of the Acts of 1976. Also added was the sentence, "Filing of a claim with the Health Claims Arbitration Office in accordance with

---

**3.** The long "tail" of liability in medical malpractice claims refers to the potential time lag between treatment (the allegedly negligent act or omission) by a health care provider and the injury or discovery of an injury by a potential plaintiff.

§ 3–2A–04 of this article shall be deemed the filing of an action for purposes of this section." *Id.*

In 1985, this Court was presented with a constitutional challenge to § 5–109, which necessitated consideration of whether the "continuous course of medical treatment" doctrine applied to application of the statute and also when the statute of limitation begins to run. *Hill v. Fitzgerald,* 304 Md. 689, 692, 501 A.2d 27, 28 (1985). To determine what triggered the statute of limitation in § 5–109 in *Hill,* the Court plumbed the meaning of "medical injury" under the Health Care Malpractice Claims Act ("HCMCA"). *Hill,* 304 Md. at 694, 501 A.2d at 29 (citing *Oxtoby v. McGowan,* 294 Md. 83, 447 A.2d 860 (1982)). We concluded that, when enacting the HCMCA, the "General Assembly obviously was not concerned with invasions of a legally protected interest which do not cause harm in the sense of loss or detriment in fact. . . . The Act is concerned with the invasion of legally protected interests coupled with harm." *Hill,* 304 Md. at 695, 501 A.2d at 30 (quoting *Oxtoby,* 294 Md. at 93–94, 447 A.2d at 860) (internal quotations omitted). We synthesized the relevant holding of *Oxtoby* as "all that is required is that the negligent act be coupled with some harm in order for a legally cognizable wrong—and, therefore, injury—to have occurred." *Hill,* 304 Md. at 696, 501 A.2d at 30 (citing *Oxtoby,* 294 Md. at 94, 447 A.2d at 860). Although *Oxtoby* dealt with "medical injury" under the HCMCA and *Hill* addressed "injury" under § 5–109, the Court concluded nevertheless that "the legislature . . . intended no substantive distinction in the legal application of the two terms." *Hill,* 304 Md. at 696–97, 501 A.2d at 30. Thus, the limitations periods in § 5–109 are triggered by "injuries which arise out of the rendering of or failure to render professional services by a health care provider," coupled with a legally cognizable harm. *Id.* (internal quotations omitted).

In concluding that § 5–109 abrogated the common law "continuing treatment" rule, the *Hill* court looked to the legislative purpose of the statute. The Court explained that

the words of § 5–109 expressly place an absolute period of limitation on medical malpractice claims calculated on the basis of when the injury was committed, *i.e.*, the date upon which the allegedly negligent act was first coupled with the harm. The purpose of the statute, readily evident from its terms, was to contain the "long-tail" effect of the discovery rule in medical malpractice cases, by restricting, in absolute terms, the amount of time that could lapse between the allegedly negligent treatment of a patient and the filing of a malpractice claim related to that treatment.

*Hill*, 304 Md. at 699–700, 501 A.2d at 32. Although the statute contained an explicit tolling exception for minority, the *Hill* court concluded that there was no room for implied exceptions because the Legislature enacted the statute in response to the "so-called crisis in the field of medical malpractice claims." *Hill*, 304 Md. at 700, 501 A.2d at 32. In this same vein of reasoning, the Court concluded that the time periods in § 5–109 must "be calculated in accordance with the literal language" of the statute. *Id.* The five-year time bar in the statute at that time operated without regard to whether an injury was discoverable readily. *Id.* Because § 5–109 was concerned with when the injury was committed, and not when the treatment was concluded finally, the common law "continuous treatment" rule was abrogated. *Hill*, 304 Md. at 700, 501 A.2d at 32.

Hill challenged the constitutionality of § 5–109 by alleging that its denial of access to the courts amounted to destruction of his rights in violation of Article 19 of the Maryland Declaration of Rights.[4] *Hill*, 304 Md. at 700, 501 A.2d at 33. In resolving that § 5–109 was constitutional, the Court in *Hill* considered the reasonableness of the statute's denial of access to the courts by looking to other cases where statutes of

---

**4.** Article 19 of the Maryland Declaration of Rights states:

> That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land.

limitations were challenged. 304 Md. at 702, 501 A.2d at 34. The Court concluded that, by imposing an absolute five-year time bar, the Legislature struck a fair balance that furthered the legitimate State purpose of maintaining control of medical malpractice insurance rates and the continuing availability of such coverage, and, at the same time, "affording protection to individuals who sustain injuries by reason of medical malpractice." *Id.* The Court considered also that in 1867, when Article 19 was adopted, the prevailing law dictated that a right or cause of action was generated from an alleged wrong, and statutes of limitation were measured from the date of the wrong. *Hill,* 304 Md. at 704, 501 A.2d at 35 (citing *Goldstein v. Potomac Elec. Power Co.,* 285 Md. 673, 404 A.2d 1064 (1979); *Waldman v. Rohrbaugh,* 241 Md. 137, 139, 215 A.2d 825, 827 (1966)). It was not until 1917 that the discovery rule was adopted for medical malpractice cases, thus changing the triggering event (and thus the time) from which the statute of limitations began to run. *Id.* (citing *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83 (1917)). The Court concluded that the limitation period in § 5–109 was a reasonable restriction on access to the courts. *Id.*

Section 5–109 was amended again in 1987, partly in response to this Court's decision in *Hill.* The relevant portion of the Senate Bill 225 of 1987, as introduced, read:

(a) Limitations.—An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in §§ 3–2A–01 of this article, shall be filed within the earlier of:

(1) Five years of the *allegedly wrongful act or omission*
 . . . .

(Emphasis added.) The Governor, through his Legislative Office, was concerned that the *Hill* court's interpretation of "injury," as meaning "the date that the allegedly negligent act was first coupled with harm," was too expansive. Governor's Legislative Office, *Briefing Paper,* H.B. 245/S.B. 225, at 3 (1987). The concern was explicated as

it would be possible under this interpretation to bring an action for a harm that had not manifested itself for years after the negligent act. In some cases, this interpretation effectively negates the limitations period. Such unexpected expansions of risk exposure diminish predictability and pricing stability and, generally, contribute to the soaring premiums in the Maryland malpractice insurance marketplace.

*Id.* The provision in the proposed bill abrogating the decision in *Hill,* substituting "allegedly wrongful act or omission" for "the injury was committed," was deleted from the bill by amendment before passage; thus, the ultimate language of the enacted statute did not change our interpretation of "injury." [5] *See* Senate Judicial Proceedings Committee, *Summary of Committee Report,* S.B. 225 (1987). The 1987 amendments to § 5–109 added explicit provisions allowing for § 5–201 (tolling the limitation period for persons under a disability) and § 5–203 (tolling the limitation period for fraud) to apply to medical malpractice actions. Ch. 592 of the Acts of 1987. After the 1987 amendments, and as it exists today, § 5–109(a) reads:

(a) *Limitations*—An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3–2A–01 of this article, shall be filed within the earlier of:

(1) Five years of the time the injury was committed; or

(2) Three years of the date the injury was discovered.

---

5. Although not dispositive of the question before us, we note the difference in the language of the summary of legislation in the fiscal notes for the proposed bill and the enrolled bill. The purpose of the proposed bill, which changed the "injury was committed" language to "the allegedly wrongful act or omission," was summarized in the initial version of the fiscal note as an "administration bill [that provides that] an action for damages in a medical malpractice suit must be filed within five years of the allegedly wrongful act or omission, or within three years of the date when the injury was discovered, whichever is shorter." The summary of the enrolled bill, in contrast, states that "[t]his enrolled bill establishes a general statute of limitations for an action to be filed for damages in a medical malpractice claim to be the earlier of 5 years from the time the injury is committed, or 3 years of the date the injury is discovered."

In *Jones v. Speed,* 320 Md. 249, 253, 577 A.2d 64, 66 (1990), we affirmed once again the constitutionality of § 5–109 (with its 1987 amendments) in our answer to a question similar to the one posed in *Hill.* Elizabeth Jones suffered from chronic headaches. *Jones,* 320 Md. at 254, 577 A.2d at 66. She sought treatment from Dr. Speed in July of 1978. *Id.* Dr. Speed treated Jones for the headaches until February 1986, but did not order a CAT scan during any visit, despite requests from Jones for such scans. *Id.* In February 1986, Jones, after suffering a seizure, was diagnosed with a brain tumor. *Id.* Jones argued that each individual medical appointment with Dr. Speed, where he failed to order the proper diagnostic tests, was a separate act of negligence, rather than a continuing course of treatment. *Id.* Therefore, her more recent appointments with Dr. Speed, which fell within the five-year window preceding filing formally her claim, were sufficient to satisfy the statute. *Jones,* 320 Md. at 256, 577 A.2d at 67. The Court agreed with Jones and concluded that she was permitted to split her claim in such a way as to allow her to pursue allegations of negligence against Dr. Speed that were related to appointments that occurred within the pertinent five year time period. *Jones,* 320 Md. at 261, 577 A.2d at 70. The Court reached this conclusion despite Dr. Speed's protestation that "acceptance of the plaintiffs' theory would frustrate the legislative intent to provide *absolute protection* to health care providers for acts of negligence occurring more than five years before the bringing of an action." *Jones,* 320 Md. at 257, 577 A.2d at 67 (emphasis added). The Court responded that "plaintiffs . . . will be entitled to recover damages only for acts of negligence occurring within five years of the filing of their claim," an interpretation that does not "offend the language or the spirit" of § 5–109. *Jones,* 320 Md. at 257, 260, 577 A.2d at 67, 69.

It was not until *Newell v. Richards* that it appears to us that we first referred, in an opinion of the Court, to § 5–109 as a "special statute of repose," rather than a statute of limitations. 323 Md. 717, 724, 594 A.2d 1152, 1156 (1991). The question in *Newell* was which party in such an action bears the

burden of proving that the three-year "discovery" provision in § 5–109(a)(2) did not bar a claim brought within the five-year limitation period in § 5–109(a)(1). *Id.* Analyzing the statute, the Court noted that

> [f]rom the plain language of the statute, it is not clear whether the General Assembly intended § 5–109 to be either (A) a five-year statute of repose with a provision that allows a defendant to cut that period short by up to two years if the defendant can show that the plaintiff did not comply with the three-year discovery provision, or (B) a three-year statute of limitations with a provision that could allow the plaintiff to extend that period up to five years if the plaintiff can show that he or she filed the claim within the three-year discovery provision.

*Newell,* 323 Md. at 725, 594 A.2d at 1157. The Court in *Newell* looked to Hill for guidance, concluding that the General Assembly intended § 5–109 to curtail the common law discovery rule and bar any claim, discoverable or not, after five years, with the objective of promoting "society's interest in maintaining malpractice insurance coverage and managing the costs of malpractice litigation." *Newell,* 323 Md. at 727–28, 594 A.2d at 1157. The Court concluded that, because the Legislature intended § 5–109 to "create a total bar to malpractice actions brought after five years from the date of the alleged negligent treatment," the medical provider bore the burden of proof to show whether a claimant's action falls under § 5–109(a)(1) or (2). *Newell,* 323 Md. at 728, 594 A.2d at 1157–58.

The Court of Special Appeals ("COSA"), in *Edmonds v. Cytology Services of Maryland, Inc.,* 111 Md.App. 233, 681 A.2d 546 (1996), discussed in depth the application of § 5–109. In 1980, Debra Edmonds sought treatment from a gynecologist, Dr. Murgalo, for cervical problems. *Edmonds,* 111 Md. App. at 236, 681 A.2d at 547. After three years of various treatments, Edmonds was diagnosed with cervical cancer. *Edmonds,* 111 Md.App. at 237, 681 A.2d at 548. Dr. Murgalo conducted a procedure to treat the cancer. *Edmonds,* 111 Md.App. at 238, 681 A.2d at 548. A biopsy of Edmond's cervix

from that procedure indicated that "[a]ll margins are free–5." *Id.* No further treatment was given to Edmonds for the cancer. *Id.* She underwent subsequent Pap smears over the next five years, with no abnormal results. *Id.* In 1989, Edmonds complained of severe back pain and was referred to an orthopedist who treated her, without positive results. *Id.* Later that year, a tumor was discovered in Edmond's abdomen and, despite treatment, she died on 5 April 1990. *Edmonds,* 111 Md.App. at 240, 681 A.2d at 549. Her relatives filed wrongful death and survival actions against the pathologist and other doctors for failing negligently to diagnose earlier her invasive cervical cancer. *Id.* The doctors asserted that Edmond's claims were time barred by § 5–109(a). *Edmonds,* 111 Md.App. at 242, 681 A.2d at 550.

The intermediate appellate court looked to the history of the statute and this Court's past opinions to determine when Edmonds suffered an actionable "injury." *Edmonds,* 111 Md.App. at 246, 681 A.2d at 552. Edmonds's relatives argued that the trial court erred when it determined, as a matter of law, that her "injury" occurred in 1983 with the misdiagnosis of the pathology sample. *Id.* They asserted that she did not suffer any "discernible effect" from the undiscovered disease until 1988 when she experienced back pain, and that was the time when the doctor's negligence harmed or "injured" Edmonds. *Id.* The COSA looked to other jurisdictions with medical malpractice claims statutes of limitation similar to Maryland's to determine when an "injury" occurs. *Edmonds,* 111 Md.App. at 247, 681 A.2d at 553.

The *Edmonds* court rejected the California view that "injury" occurs when the patient discovers the harm because this would embrace essentially the discovery rule, which had been rejected by enaction of § 5–109.[6] *Edmonds,* 111 Md.App. at

---

6. The California medical malpractice claims statute provides, in relevant part:

In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after *the date of*

250–51, 681 A.2d at 554. The California view, applied to § 5–109, would also "render meaningless the dichotomy between C.J. § 5–109(a)(1) and C.J. § 5–109(a)(2)," and be contrary to this Court's statement in *Hill* that § 5–109(a)(1) runs "without regard to whether the injury was reasonably discoverable." *Edmonds*, 111 Md.App. at 251, 681 A.2d at 554–55. The COSA rejected also Delaware's view that "injury" occurs at the time of the wrongful act or omission.[7] *Edmonds*, 111 Md.App. at 255, 681 A.2d at 557. In rejecting Delaware's approach, the intermediate appellate court opined that Maryland could have followed, but did not, the majority of jurisdictions with medical malpractice claims statutes of limitations that commence upon the occurrence of the negligent act or omission. *Id.* In fact, the Maryland General Assembly rejected an attempt to bring its medical malpractice claims statute of limitation more in line with these other jurisdictions in 1987. *Id.* Noting the stated purpose of the 1987 rejected amendments to S.B. 225, "to overturn the decision of the Court of Appeals in *Hill*," the intermediate appellate court concluded that "[t]his history provides strong evidence that the General Assembly did not intend to create an ironclad rule that a medical malpractice claim would be barred if filed more than five years after the health care provider's act." *Edmonds*, 111 Md.App. at 256, 681 A.2d at 557. The court discerned that the

---

*injury* or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for [fraud, intentional concealment, or the presences of an unauthorized foreign body in the patient].

*Edmonds v. Cytology Servs. of Md., Inc.*, 111 Md.App. 233, 248, 681 A.2d 546, 553 (1996) (citing Cal.Code § 340.5 (1996)).

7. Delaware's medical malpractice claims statute of limitation states, in relevant part:

No action for the recovery of damages upon a claim against a health care provider for personal injury, including person injury ... arising out of malpractice shall be brought after the expiration of 2 years from the date upon which such *injury* occurred. . . .

*Edmonds*, 111 Md.App. at 255, 681 A.2d at 557 (citing Del.Code Ann. tit. 18, § 6856 (1989)).

General Assembly, concerned with the competing interests of patients who suffered medical malpractice and the public interest in keeping malpractice insurance rates low, struck a balance by "providing that the five year 'cutoff' period in C.J. § 5–109(a)(1) would begin to run on the date when the 'injury' resulting from the health care provider's wrongful act or omission occurred, rather than from the date of that act or omission." *Edmonds*, 111 Md.App. at 257, 681 A.2d at 557–58. Reiterating the holdings of *Hill* and *Oxtoby*, the COSA stated that an "injury" occurs when a patient suffers a legally cognizable harm. *Edmonds*, 111 Md.App. at 259, 681 A.2d at 558.

The *Edmonds* court noted also the comparison to Courts and Judicial Proceedings Article § 5–108(b), a generally accepted statute of repose, to show that the General Assembly was cognizant of how to create a statute where the limitations period was triggered by a negligent act or omission, rather than an "injury." *Edmonds*, 111 Md.App. at 268–69, 681 A.2d at 563. This Court affirmed *Edmonds* in *Rivera v. Edmonds*, 347 Md. 208, 209, 699 A.2d 1194, 1195 (1997), but, in doing so, referred notably to § 5–109 as a statute of repose.

In *Piselli*, 371 Md. at 193, 808 A.2d at 510, we pondered, in the context of another certified question of law from the Fourth Circuit, whether the three-year time limit of § 5–109(a)(2) begins to accrue when a minor child discovers an injury or when the parents of the child discover the injury. We determined that the child's claim did not accrue until he reached the age of majority, and in reaching that epiphany, looked to the legislative history of the medical malpractice claims statute to determine its proper effect. *Piselli*, 371 Md. at 203, 808 A.2d at 517. This Court concluded that § 5–109(a)(2) reflects Maryland's traditional discovery rule. *Id.* In determining the reasonableness of restrictions on access to the courts, we considered our previous opinions upholding "the five-year statute of repose for medical malpractice actions set forth in § 5–109(a) and the 10 and 20–year statutes of repose for actions based on defective conditions in real property set forth in § 5–108." *Piselli*, 371 Md. at 207–08, 808 A.2d at 519

(citing *Hill,* 304 Md. at 703–05, 501 A.2d at 34–35; *Whiting–Turner Contracting Co. v. Coupard,* 304 Md. 340, 359–60, 499 A.2d 178, 188–89 (1985)). We noted that even our characterization of these statutes as strict repose periods did not create unreasonable restrictions upon remedies or access to the courts, as applied to adult plaintiffs. *Piselli,* 371 Md. at 208, 808 A.2d at 519. Thus, the restriction of access to the courts in § 5–109 was upheld as reasonable. *Id.*

Most recently, in *Burnside,* 412 Md. at 184, 986 A.2d at 429, we discussed the term "injury" in the context of determining the proper venue for a medical malpractice action. In discussing *Jones,* we referred to § 5–109 as a statute of limitations, but in discussing *Edmonds,* also referred to the statute as one of repose. *Burnside,* 412 Md. at 203–04, 986 A.2d at 440. This seems to be the "last straw" that triggered the certification of the question propounded by the federal court here. The proper classification of § 5–109 in *Burnside,* however, was not a material factor bearing on the outcome of the case.

### B. *What Distinguishes a Statute of Limitation from a Statute of Repose?*

There is an abundance of scholarly commentary aimed at clarifying the differences between statutes of limitation and statutes of repose. We shall begin with the basics. Black's Law Dictionary defines "statute of limitations" as a "law that bars claims after a specified period . . . a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." Black's Law Dictionary 1546 (9th ed. 2009). A statute of repose is defined as a "statute barring any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury."[8] *Id.*

---

8. In the 5th Edition of Black's Law Dictionary (1979), the definition of statute of repose was "a legislative act whereby the state declares that after lapse of a specified time, a claim shall no longer be enforceable in

 Statutes of limitations are enacted typically to encourage prompt resolution of claims, to suppress stale claims, and to avoid the problems associated with extended delays in bringing a cause of action, including missing witnesses, faded memories, and the loss of evidence. (*See Harig v. Johns–Manville Prods. Corp.*, 284 Md. 70, 75, 394 A.2d 299, 302 (1978)). Statutes of limitations promote judicial economy and fairness, but do not create any substantive rights in a defendant to be free from liability. *First United*, 882 F.2d at 865. A statute of limitations is typically triggered by the accrual of a claim. *Am. Gen. Assur. Co. v. Pappano*, 374 Md. 339, 351, 822 A.2d 1212, 1219 (2003). Tolling, typically for reasons of fraudulent concealment or minority, is applicable generally to statutes of limitation. *First United*, 882 F.2d at 866.

 The label of statute of repose is used generally to describe a statute which shelters legislatively-designated groups from an action after a certain period of time. Susan C. Randall, *Due Process Challenges to Statutes of Repose*, 40 Sw. L.J. 997, 998 (1986). Statute of repose, as that term is used commonly, refers to a special statute with a different purpose and implementation than a statute of limitation. Randall, *supra*, at 1002. The purpose of a statute of repose is to provide an absolute bar to an action or to provide a grant of immunity to a class of potential defendants after a designated time period. Francis E. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am. U.L.Rev. 579, 585 (1980); *see also First United*, 882 F.2d at 866. Statutes of repose differ from statutes of limitation in that the trigger for a statute of repose period is unrelated to when the injury or discovery of the injury occurs. *First United*, 882 F.2d at 866. Statutes of repose run from an event that is unrelated to when the injury occurs. *Id; see also*

a judicial proceeding." This definition is almost identical to that of a statute of limitation and, while this was superceded by more modern distinctions between the two types of statutes, we note this as a possible contributor to confusion in our opinions until 1994, when the Sixth Edition was published with the same definitions as appear in the 2009—9th Edition.

McGovern, *supra*, at 585. Thus, a statute of repose may extinguish a potential plaintiff's right to bring a claim before the cause of action accrues. Randall, *supra*, at 1004–05. In common parlance, statutes of limitation and statutes of repose are differentiated consistently and confidently by whether the triggering event is an injury or an unrelated event; the latter applying to a statute of repose. Daniel J. La Fave, *Article: Remedying the Confusion Between Statutes of Limitations and Statutes of Repose in Wisconsin—A Conceptual Guide*, 88 Marq. L.Rev. 927, 928 (2005).

Numerous courts have also held that statutes of repose are characterized by a trigger that starts the statutory clock running for when an action may be brought based on some event, act, or omission that is unrelated to the occurrence of the plaintiff's injury. *See McCann v. Hy–Vee, Inc.*, 663 F.3d 926, 931 (7th Cir.2011) ("[T]here is no tort without an injury and if the period in which a tort suit can be brought runs from the date of the tort, it is a period prescribed by a statute of limitations rather than by a statute of repose"); *Hoffner v. Johnson*, 660 N.W.2d 909, 913–15 (N.D.2003) (explaining that a statute of repose "begins to run from the occurrence of some event other than the event of an injury that gives rise to a cause of action and, therefore, bars a cause of action before the injury occurs"); *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 590 n. 11 (6th Cir.2004) ("A statute of limitations focuses on time measured from an injury; a statute of repose rests on the time from some initiating event unrelated to an injury."); *Clark Cnty. v. Sioux Equip. Corp.*, 753 N.W.2d 406, 415 n. 6 (S.D.2008) (explaining that a statute of repose "begins to run from a date that is unrelated to the date of an injury").

Opinions of this Court and the federal courts have considered the difference between a statute of repose and a statute of limitation. If a reliable distinction between statutes of limitation and statutes of repose existed prior to 1994, we muddied the waters in *Hecht v. Resolution Trust Corporation*, 333 Md. 324, 635 A.2d 394 (1994). There, we stated that "[s]tatutes of limitation are statutes of repose, allowing individuals the ability to plan for the future," designed to ensure

fairness to defendants through prompt resolution of claims and to avoid "problems that may stem from delay, such as loss of evidence, fading of memory, and disappearance of witnesses." *Hecht,* 333 Md. at 333, 635 A.2d at 399. In *Hecht,* we set forth a standard of strict construction regarding tolling of statutes of limitations, concluding that, absent legislative creation of an exception to the statute of limitations, we will not allow any "implied and equitable exception to be engrafted upon it." *Id.* In hindsight, although the unfortunate conflation of statutes of limitation and statutes of repose does appear briefly in *Hecht,* the explanation accompanying that statement is quintessentially an accurate description of the purposes of a statute of limitation.

The distinction between statutes of limitations and repose has been considered also in the context of Courts and Judicial Proceedings Article § 5–108, which governs professional liability actions brought against architects, engineers, and contractors. Section 5–109, the medical malpractice statute of limitations, has been used sometimes to compare and contrast the statute of repose contained in § 5–108.

In *First United,* an appeal from the district court, deciding whether the repose period contained within § 5–108 was preempted by the Comprehensive Environmental Response and Compensation Act, 42 U.S.C. § 9658 (2012), the Fourth Circuit discussed the distinctions between a statute of repose and a statute of limitations. *First United,* 882 F.2d at 864. The court explained that a statute of limitation acted as a "defense to limit the remedy available from an existing cause of action." *First United,* 882 F.2d at 865 (citing *Goad v. Celotex Corp.,* 831 F.2d 508, 511 (4th Cir.1987)). Statutes of limitations are designed to provide fairness to defendants and to "encourage prompt resolution of stale claims." *First United,* 882 F.2d at 866 (citing *Harig,* 284 Md. at 75, 394 A.2d at 302). Statutes of repose, on the other hand, create a substantive right protecting a defendant from liability after a legislatively-determined period of time. *Id.*

When enacting a statute of repose, a legislature balances the economic best interests of the public against the rights of potential plaintiffs and determines an appropriate period of time, after which liability no longer exists. *Id.* (citing *Whiting–Turner*, 304 Md. at 349–50, 499 A.2d at 183). The court noted that statutes of limitations are tolled often by fraudulent concealment, but that statutes of repose are not because the latter are an absolute time bar, after which liability no longer exists, and to toll the repose period would "upset the balance struck by the legislative body." *Id.* (citing *Knox v. AC & S, Inc.*, 690 F.Supp. 752, 759 (S.D.Ind.1988)). The language of the statute of repose, § 5–108, indicated clearly that the Legislature intended to tie the accrual of the cause of action to the date of completion of a particular property improvement because traditional tolling mechanisms expanded the liability of defendants. *Id.* (citing *Whiting–Turner*, 304 Md. at 349–50, 499 A.2d at 183). The court contrasted the provision in the then extant version of § 5–109 that allowed specifically for tolling of the limitations period based on fraudulent concealment by applying Courts and Judicial Proceedings § 5–203. *Id.* Because the General Assembly did not apply specifically § 5–203, as it did in § 5–109, the court concluded that the statute of repose in § 5–108 did not toll for fraudulent concealment. *Id.*

In another case in the United States District Court for the District of Maryland, the court relied upon the characterizations in *First United* to describe the current version of § 5–109 as a statute of limitation. *Streeter v. SSOE Sys.*, 732 F.Supp.2d 569, 577 (2010). The court based its classification of § 5–109 as a statute of limitation because it is invoked "after an injury has already occurred and a claim accrued and sets a limit on how long a plaintiff has to seek a legal remedy for that claim." *Streeter*, 732 F.Supp.2d at 577. Thus, the court concluded, § 5–109 is "simply 'a procedural device that operates as a defense to limit the remedy available from an existing cause of action.'" *Streeter*, 732 F.Supp.2d at 577 (quoting *First United*, 882 F.2d at 865). Rejecting the plaintiff's characterization of § 5–109 as a statute of repose, the

court reasoned that "the difference between a statute of limitations and statute of repose is that in the former, a cause of action has already accrued and a limitation is placed on the time an injured individual has to file a claim, and in the latter, a limitation is placed on the time in which an action may accrue should an injury occur in the future." *Streeter*, 732 F.Supp.2d at 577 n. 4 (citing *First United*, 882 F.2d at 865–66). The court noted also that § 5–109 may be tolled in order to prevent injustice, a feature distinguishable from § 5–108, a statute of repose. *Streeter*, 732 F.Supp.2d at 577.

In *Hagerstown Elderly Associates Limited Partnership v. Hagerstown Elderly Building Associates Limited Partnership*, 368 Md. 351, 793 A.2d 579 (2002), we looked in depth at Maryland's statute governing the time to bring an action for injuries to persons or property occurring after completion of an improvement to realty, Courts and Judicial Proceedings Article § 5–108. We concluded that § 5–108 contains two statutes of repose, (a) and (b), and one statute of limitation, (c). *Hagerstown Elderly Assocs. Ltd. P'ship*, 368 Md. at 358, 793 A.2d at 583. Subsections (a) and (b) were statutes of repose because they used the same format and similar language to make clear that "a cause of action for damages does not accrue and a person may not seek contribution or indemnity" after a fixed time period "after the date the entire improvement first becomes available for its intended use." *Id.* In contrast to subsections (a) and (b), we considered subsection (c) a statute of limitations because its language made clear that "upon accrual of a cause of action referred to in subsections (a) and (b), an action shall be filed within three years." *Id.* The key difference between the sections was whether accrual of the cause of action was required to trigger the limitations period.

### C. Why We Conclude That Courts and Judicial Proceedings Article § 5–109(a)(1) is a Statute of Limitation.

The primary argument advanced by Anderson is that, because § 5–109(a)(1) is triggered by an injury or a legally

cognizable event, it must be classified as a statute of limitation because statutes of repose are triggered by an event unrelated to the occurrence of an injury or the accrual of the plaintiff's cause of action. Further, Anderson states that, because § 5–109(a)(1) requires an injury to become activated, it cannot be a statute of repose because it fails to immunize a potential health care provider for injuries that have not yet arisen. Additionally, Anderson reasons, because § 5–109(a)(1) is subject to tolling and provides no conclusive date at which liability for a health care provider is extinguished, it cannot be a statute of repose.

The government rests its classification of § 5–109 as a statute of repose primarily on the fact that § 5–109 was enacted by the Legislature in response to a crisis in the medical malpractice insurance industry. It reasons that, because the statute was designed to balance the competing public and private rights in the best interest of society, it must be one of repose. Thus, the United States urges us, in the present case, to conclude that § 5–109(a)(1) is a statute of repose and that § 5–109(a)(2) is a statute of limitation.[9]

As we discussed earlier in this opinion, there are overlapping features of statutes of limitations and statutes of repose, and definitions aplenty from which to choose. There is, apparently, no hard and fast rule to use as a guide. For example, tolling applies typically to statutes of limitations, rather than statutes of repose, but North Dakota's medical malpractice claims statute of repose tolls for fraudulent conduct of the physician. N.D. Cent.Code § 28–01–18(3) (2012). We choose not to rely on any single feature of § 5–109(a)(1) in

---

9. We agree, based on our conclusion in *Hagerstown Elderly Associates Limited Partnership v. Hagerstown Elderly Building Associates Limited Partnership* that § 5–108 contains within its terms both statutes of limitations and repose, that this same dichotomous conclusion is at least conceptually available also for § 5–109. 368 Md. 351, 358, 793 A.2d 579, 583 (2002). Section 5–109(a)(2) is a statute of limitations, according to the United States here, because "the time period begins to run only after the claim accrues." We find this contention a bit perplexing, however, because the language in (a)(2), where the claim accrues is "the injury," is used by (a)(1) as a trigger as well.

determining its proper classification; rather, we look holistically at the statute and its history to determine whether it is akin to a statute of limitation or a statute of repose.

As a threshold matter, we disagree with the government's primary argument that because the Legislature enacted § 5–109 in response to an economic crisis the statute must be one of repose. During the national medical malpractice insurance crisis of the 1970s, reforms of many stripes swept the country. Most states enacted some form of medical malpractice tort reform and Maryland was among them. Some states chose to adopt strict statutes of repose that measured the time for a plaintiff to bring an action from the date of the allegedly negligent act or omission [10] while others chose to adopt a more

---

**10.** North Dakota's statute of repose for malpractice reads, in relevant part:

> The following actions must be commenced within two years after the claim for relief has accrued: ... An action for the recovery of damages resulting from malpractice; provided, however, that the limitation of an action against a physician or licenced hospital will not be extended beyond six years of the act or omission of alleged malpractice by a nondiscovery therefore unless discovery was prevented by the fraudulent conduct of the physician or licensed hospital.

N.D. Cent.Code § 28–01–18(3) (2012). *See Hoffner v. Johnson,* 660 N.W.2d 909 (N.D.2003); Tracy J. Lyson, *Case Comment: Constitutional Law—Equal Protection of the Laws: The Equal Protection Challenge to the Medical Malpractice Statute of Repose in North Dakota,* 80 N.D.L.Rev. 175 (2004) (classifying North Dakota's statute as one of repose). North Carolina's malpractice claims statute of repose states, in relevant part: "a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action...." N.C. Gen. Stat. § 1–15(c) (2012). *See* Michael John Byrne, *Survey of Developments of North Carolina and the Fourth Circuit, 1994: I: Civil Procedure,* 73 N.C. L.Rev. 2209 (1995) (classifying North Carolina's statute as one of repose). Arkansas's medical malpractice statute of repose provides, in relevant part: "[t]he date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time." Ark.Code Ann. § 16–114–203 (2012); *See* Robert W. George, *Prognosis Questionable: An Examination of the Constitutional Health of the Arkansas Medical Malpractice Statute of Repose,* 50 Ark. L.Rev. 691 (1998) (classifying Arkansas's malpractice statute as one of repose). Utah's statute addressing the time for bringing a medical malpractice claim contains both a statute of limitations and repose. Timothy C. Hale,

lenient statute of limitation [11] that was measured from the date of an injury. Maryland chose the latter.

The impetus for the legislative enactment does not dictate alone our reading of § 5–109. First and foremost, the plain language of the statute controls. Our reading of the plain language leads us to conclude that the Legislature struck a balance between the public interests of ensuring the continued availability of medical malpractice insurance in the State and the rights of victims of medical malpractice to initiate a cause of action for five years after their injury. The General Assembly was free to choose a different statutory scheme, one that did not run the limitations period from an injury or toll the period for minority or otherwise, but it chose not to do so. It chose, instead, to adopt a statute of limitations.

The General Assembly, although it had many opportunities to put in place a strict statute of repose, rejected that option outright in 1987. The Briefing Paper provided to the General Assembly describing the impact of this Court's decision in *Hill* indicated clearly that the statute, which triggered the limitations period based on injury, could allow potentially for some long "tail" malpractice claims. In maintaining § 5–109(a)(1)'s trigger as "the injury," the Legislature accepted implicitly the risk implications of long "tail" claims.

If the Legislature intended § 5–109(a)(1) to be an absolute time bar, it likely would not have subjected the limitations to explicit tolling for fraudulent concealment and minority. Further, in our view, the Legislature rejected knowingly the 1987

---

*Development: Recent Developments in Utah Case Law: The Constitutionality of the Utah Health Care Malpractice Act as Applied to Minors*, 1995 Utah L.Rev. 350 (1995). The statute provides, in relevant part: "1) A malpractice action against a health care provider shall be commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect, or occurrence." Utah Code Ann. 78B–3–404 (2012).

11. See California's medical malpractice statute of limitations, discussed *supra,* footnote 6.

amendments that would have created an absolute time bar by which medical malpractice insurance carriers and health care providers could have calculated an exact life-span of liability. Instead, the statute measures time from the date of an injury. As we have seen from our previous opinions, injury may not coincide always with the date of an allegedly wrongful act or omission. Taken as a whole, the Legislature did not intend to create a strict statute of repose here.

This conclusion is supported by contrasting § 5–109 to the statutes of repose contained within § 5–108. Subsections (a) and (b) of § 5–108 use the explicit edict that a "cause of action does not accrue" and commences the running of the time period based on the date of completion of the property improvements. Section 5–109(a)(1), however, is triggered by the cause of action itself—the injury. The time period is not related to an event or action independent of the potential plaintiff. In other words, without the plaintiff's injury (the cause of action), the limitations period would not commence to run. The statutes of repose in § 5–108 demonstrate that, had the General Assembly wished to create an absolute time bar granting immunity to health care providers, it knew the difference and how to express what it intended. The statutes of repose adopted by numerous other states, contemporaneously with the original enactment of § 5–109, provided a range of language alternatives creating an absolute time bar. Maryland did not follow suit.

In the past, this Court's opinions have used interchangeably sometimes the descriptors "repose" and "limitations," as well as the term "an absolute bar," to describe § 5–109; however, a focused critical evaluation of the entire suite of legislative history and judicial interpretations of the statute demonstrate that "statute of limitations" is the more appropriate classification. Although in *Hill* we called the statute an "absolute bar," we set forth in the next breath the important principle that "injury" occurs when the "allegedly negligent act was first coupled with harm." This principle opens the door for and blesses claims arising from an allegedly negligent act that was

more than five-years past, even if the injury—or cognizable legal harm—does not occur for many years.

In *Jones*, we shifted away from the "absolute bar" description, allowing a claimant to proceed with her action against a doctor who commenced his negligent treatment of Jones many years before she filed her action, by treating each visit with the doctor as a potentially separate negligence claim, thereby splitting the visits falling within five years prior to filing suit from those falling earlier. In doing so, we avoided *Hill's* holding that the continuous treatment doctrine was abrogated and allowed the claimant to proceed to trial on the individual doctor visits that were within the five-year time limitation in § 5–109(a)(1). In contrast, our language sharpened in *Newell*, where we commented that § 5–109 creates a "total bar to malpractice actions brought after five years from the date of the alleged negligent treatment." *Newell* appeared to distance itself from the expansive definition of "injury" in *Hill*.

█ Despite our occasionally disparate characterizations of § 5–109 in the past, we conclude now that § 5–109(a)(1) is a statute of limitations because its trigger is an "injury" which, under our holding in *Hill*, means when the negligent act is coupled with some harm, rather than being dependent on some action independent of the injury. The injury is the cause of action and, thus, § 5–109(a)(1) does not immunize a health care provider simply through the passage of time following its negligent act or omission.

**CERTIFIED QUESTION ANSWERED AS SET FORTH ABOVE. PURSUANT TO SECTION 12–610 OF THE COURTS AND JUDICIAL PROCEEDINGS ARTICLE, THE COSTS SHALL BE EQUALLY DIVIDED BE-TWEEN THE PARTIES.**